## HOOK et al. v. BOSWORTH et al.

### (Circuit Court of Appeals, Seventh Circuit. November 27, 1894.)

### No. 170.

1. RAILROAD FORECLOSURE—APPOINTMENT OF RECEIVER—OF RAILROAD NOT A PARTY.

A suit was brought by the trustee of a mortgage, made by the C. Ry. Co., for the foreclosure of such mortgage, and in such suit receivers were appointed, not only of the property of the C. Ry. Co., but of that of several other railway companies, not mentioned in the mortgage or made parties to the bill, but which were operated with the defendant company in one system, upon some plan not disclosed by the record; and certain petitions, cross petitions, and bills of parties whose relation was not shown by the record, were consolidated with the foreclosure suit; and the receivers so appointed were afterwards ordered to turn over the property of the J. Ry. Co., one of such other companies, to that company. *Held,* that the court was without jurisdiction to appoint receivers of the property of such companies, other than the defendant; that the order making such appointment, if not absolutely void, was revoked as to the J. Ry. Co. by the direction to the receivers to return its property to that company; and that the court could not direct persons who had received moneys belonging to such company to turn them over to the receivers.

2. SAME—RECEIVER'S RIGHT TO EARNINGS.

Where a railroad mortgage contains a provision that until default the mortgagor shall remain in possession of the railway, etc., exercise its franchises, and collect and use its revenues, a receiver appointed in a suit for foreclosure of the mortgage, the filing of the bill constituting the first demand for possession of the road, is not entitled to moneys earned by the railroad company prior to the filing of the bill, though not paid until after the appointment of the receiver.

On Appeal from the Circuit Court of the United States for the Southern District of Illinois.

Petition in the nature of a bill in equity by C. H. Bosworth and E. Ellery Anderson, receivers of the Chicago, Peoria & St. Louis Railway Company, against William S. Hook and Marcus Hook, to require defendants to pay petitioners certain money collected for transportation of mail. Petitioners obtained a decree. Defendants appeal. Reversed.

Isaac L. Morrison and Thomas Worthington, for appellants.

Bluford Wilson (Philip Barton Warren, of counsel), for appellees.

Before WOODS and JENKINS, Circuit Judges, and BUNN, District Judge.

JENKINS, Circuit Judge. The Chicago, Peoria & St. Louis Railway Company owned a railway in the state of Illinois extending from the city of Pekin to Jacksonville, with a branch line from Havana to Springfield. The Jacksonville, Louisville & St. Louis Railroad Company owned a railway extending from Jacksonville to Centralia, a distance of about 112 miles. The Litchfield, Carrollton & Western Railroad Company and the Louisville & St. Louis Railway Company were respectively the owners of other lines of railway, the record not disclosing their location. It may be inferred, however, that they connected at one or more points with the other railways mentioned. Each railway company was an independent corporation, and it is to be inferred from the record, although not specifically so stated, that these several lines of railway were parts of one general system, and were operated together under some arrangement not disclosed by the record. On the 21st day of September, 1893, the Mercantile Trust Company of New York filed its bill in the court below against the Chicago, Peoria & St. Louis Railway Company to foreclose a mortgage or trust deed upon the railway from Pekin to Jacksonville and from Havana to Springfield. On the same day the court appointed the appellees receivers of the lines of railway mentioned. The order provided, among other things, that the receivers should forthwith be in possession of, operate, and maintain said railway and premises—

"Being the railroad of the Chicago, Peoria & St. Louis Railway Company, comprising also the Jacksonville, Louisville & St. Louis Railroad Company, the Litchfield, Carrollton & Western Railroad Company, and the Louisville & St. Louis Railway Company, and including a partially constructed line of railway northwestwardly from Havana, together with all the constituent railroad lines now operated by said Chicago, Peoria & St. Louis Railway Company, commonly known as the 'Jacksonville Southeastern Line,' more fully and particularly described as follows, to-wit: Extended, lying, and being a railroad from the city of Pekin, through the counties of Tazewell, Mason, Cass, to and through the city of Jacksonville, in the county of Morgan; and thence, through the said county of Morgan and the counties of Macoupin and Montgomery, to and through Litchfield; and thence, through the counties of Montgomery, Macoupin, Madison, and St. Clair, to East St. Louis, in the said last-named county; and from Litchfield southeasterly, through the counties of Montgomery, Bond, and Clinton, to Centralia, in the county of Marion; and thence through the county of Marion, to Drivers, in the county of Jefferson; and from Havana, in said county of Mason, to

Petersburg, in the county of Menard; and thence to Springfield, in the county of Sangamon; also, from Barnett westerly through Carlinville, in said county of Macoupin; thence through Carrollton, in the county of Greene, to Columbiana, on the Illinois river,—together with all interests in, and contract rights and privileges for, the use of the Peoria & Pekin Union Railway from the said city of Pekin to the city of Peoria, in the county of Peoria, and all terminal contract rights and privileges at East St. Louis, all in the state of Illinois, together with all equipment owned, leased or held in car trusts or otherwise, and the tolls, rents, incomes, franchises, issues, and profits of the said Chicago, Peoria & St. Louis Railway Company and its said constituent companies, and all their appurtenances, as well as their land and other premises as now held, used, and operated by the said company, as fully described in their existing mortgages, deeds of trust, leases, contracts, and other evidences of title and possession, reference thereto, for greater certainty, to be had, with all property rights, powers, privileges and franchises and equities now owned, possessed, held or controlled by the said the Chicago, Peoria & St. Louis Railway Company; it being the purpose and intention of this order to clothe the said receiver with all property rights, powers, privileges, and franchises now owned, possessed, held, or controlled by the said 'the Chicago, Peoria & St. Louis Railway Company, or any of the said constituent or affiliated lines now under a common management as the Jacksonville Southeastern Line.' "

The bill of complaint in that case contained no reference to the Jacksonville, Louisville & St. Louis Railroad Company, or to any other of the companies above mentioned. Neither of them was a party to the bill, nor is any statement made therein of the manner in which, or the company by whom, such lines of railway were operated. The prayer of the bill, in addition to the usual prayer for foreclosure, asked for a receiver of the property covered by the mortgage of the Chicago, Peoria & St. Louis Railway Company, which mortgage did not affect any of the lines referred to other than those of that company. On the same day the court below ordered that certain petitions, cross petitions, and bills in the cases against the Chicago, Peoria & St. Louis Railway Company, namely, R. J. Cavett, receiver (entitled and filed in the cause of the Mercantile Trust Company against the St. Louis & Chicago Railway Company et al.), John M. Coughlin et al. (entitled and filed in the intervening petition of R. J. Cavett, receiver), Woodward & Tiernan Printing Company, the St. Louis & Eastern Railway Company, and the Atchison, Topeka & Santa Fé Railroad Company, be consolidated with the foreclosure suit mentioned, and under the title of that suit, and that they thereafter proceed under said name as one suit, with all rights reserved. The record before us is silent with reference to the character of those petitions, cross petitions and cross bills, or of the suit against the St. Louis & Chicago Railway Company. The receivers so appointed took possession not only of the property of the Chicago, Peoria & St. Louis Railway Company, but also of the lines of railway of the other companies mentioned. On the 5th of December, 1893, the court directed the receivers to return to the Jacksonville, Louisville & St. Louis Railroad Company its railway and property. On the 9th of December, 1893, one Henry W. Putnam filed his bill against the Jacksonville, Louisville & St. Louis Railroad Company for the foreclosure of a certain mortgage or trust deed upon the line of railway of that company from Jacksonville to Centralia, and

prayed for the appointment of a receiver, and on that day Mr. S. P. Wheeler was appointed such receiver. Thereupon, on that day, an order was entered by the court in the case of the Mercantile Trust Company against the Chicago, Peoria & St. Louis Railway Company, reciting the appointment of a receiver of the Jacksonville, Louisville & St. Louis Railroad Company in the Putnam suit, and directing that the property of that company be turned over and delivered by the appellees to, and that the accounting with respect to its management theretofore ordered to be rendered by them to that company be made with, its receiver. For the quarter ending October 1, 1893, there became due to the Chicago, Peoria & St. Louis Railway Company from the United States, for the transportation of the mails over its line of railway, the sum of $4,632.63, of which amount $453.20 was earned after September 21, 1893, and the remainder was earned prior to the filing of the bill of foreclosure and the appointment of the receivers. For the same quarter there became due to the Jacksonville, Louisville & St. Louis Railroad Company from the United States, for transportation of mails over its line of railway, the sum of $2,653.56. On the 20th of January, 1894, the appellees, as receivers of the Chicago, Peoria & St. Louis Railway Company, filed their petition in the suit of the Mercantile Trust Company of New York against that company, that the appellants, William S. and Marcus Hook, who had received from the United States the several sums of money mentioned, be required to pay over the same to them. To this petition the Messrs. Hook made answer, setting forth that William S. Hook was, and had for many years been, president and general manager of the Chicago, Peoria & St. Louis Railway Company, and Marcus Hook its auditor and treasurer; that they had received from the United States the sum of $4,632.63, the compensation for mail service over that road from July 1, 1893, to October 1, 1893; that William S. Hook, upon receiving the usual warrant, transferred the same to Marcus Hook, the treasurer of the company; that of said money the sum of $453.20 was earned by the road between September 21 and September 30, 1893, and since the filing of the bill and the appointment of the receivers, and which amount Marcus Hook offered to pay to them; and that the balance of the money had been "applied in the payment of debts contracted on account of the operating of such line of railroad, and which in equity should be paid." The answer further admits the receipt from the government of $2,653.56 for transportation of mails over the Jacksonville, Louisville & St. Louis Railroad, and that Mr. William S. Hook received the same as general manager of that railway company. The mortgages or trust deeds upon the two several railways each contained a provision that "Until default shall be made by the said party of the first part, its successors or assigns, in the payment of interest or principal of said bonds, or the due observance of the covenants and agreements hereinafter contained on the part and behalf of the said party of the first part, the said party of the first part, its successors or assigns, shall be suffered and permitted to remain in actual possession of said railway and premises, and to exercise the franchises and rights relating thereto, and to collect, receive,

and use revenues and profits thereof in any manner which shall not impair the lien created by these presents." The matter of the petition was heard by stipulation of the parties "upon the petition and answer thereto, with the right of either party to refer to, and make a part of the record, any of the files in said consolidated cause, and also the exhibit filed in the case of Henry W. Putnam against the Jacksonville, Louisville & St. Louis Railroad Company, and the interlocutory order entered in said cause appointing Samuel P. Wheeler receiver of the last-named railroad, and the bond and oath of office of said Wheeler." Upon the hearing of the petition the court rendered a decree that the appellants had wrongfully appropriated the several sums of money mentioned, and directed them forthwith to pay over to the petitioners, C. H. Bosworth and E. Ellery Anderson, the receivers of the Chicago, Peoria & St. Louis Railway Company, the sum of $4,632.63, with interest from the date of the decree, being the amount received for mail service upon the Chicago, Peoria & St. Louis Railway, and also the sum of $2,653.56, with like interest, being the sum received for transportation of mails over the Jacksonville, Louisville & St. Louis Railroad. The appellants bring here this decree for review.

1. We are unable to understand upon what principle the appellees, receivers of the Chicago, Peoria & St. Louis Railway Company, can maintain the right to recover of the appellants the moneys received by the latter for mail service over the lines of the Jacksonville, Louisville & St. Louis Railroad Company. The latter company was not a party to the suit in which the appellees were appointed receivers. There was neither attack therein made with respect to this railway, nor any claim asserted to its possession. The company was neither served with process in that suit, nor did it appear therein. The court therefore never acquired jurisdiction in that suit to appoint receivers of its property. The order would seem to have been passed upon the assumption that, because all the lines were practically component parts of one system, the public interest would be conserved by the continuance of such management under one head. It is not made clear to us that such necessity existed, nor are we informed why these separate and distinct lines of railway, although co-operating with each other in the conduct of business, could not be operated under separate management. Possibly it is to be preferred, if the interests were identical, that it should be under a single management. That is matter for those pecuniarily interested in the several railways. Such consideration, however, cannot avail to give the court jurisdiction over the property of one not a party to the suit, and with which it was in no legal sense concerned. The mortgage upon the Chicago, Peoria & St. Louis Railway in no way affected the property of the Jacksonville, Louisville & St. Louis Railroad Company, and the bill was wanting in any averment which would sanction the taking possession by the receivers of the property of the latter company. As before stated, we are not informed by the record of the nature of the intervening petitions consolidated with that foreclosure suit. It is intimated that they were by creditors of the Chicago, Peoria & St. Louis Railway Company for debts contracted by

it in the management of all the lines of railway mentioned. We are not informed by the record of the nature of the arrangement, if any, under which these lines were operated as one system. It may possibly be that, while one railway company operating the entire system would be responsible for all debts it incurred, creditors might also have a remedy over against a "constituent or affiliated" company, so called, for debts applicable to the management of a particular line. That would depend upon circumstances not here disclosed. Such right of action would not, however, warrant the taking possession of its property by receivers of another railway in a suit to which it was not a party. We should do violence to a fundamental principle of the law to uphold the right of receivers of one corporation to take possession of the property of another not a party to the suit in which such appointment is made. No one should be concluded without his day in court.

It is insisted that the direction to the receivers to take into their possession and control the railway of the Jacksonville, Louisville & St. Louis Railroad Company was voidable merely, not void. We cannot assent to this contention. If, however, such direction was merely voidable, the order in that regard was, before this petition, set aside and revoked. In a suit to which that company was a party, another has been appointed its receiver, and these appellees, in the suit in which the decree under review was rendered, and before this petition, directed to turn over the property of that company which came to their possession to such receiver. If, under the order of September 21, 1893, they acquired any right whatever over the property of that company, that right was extinguished by the order of December 5, 1893. Subject to the accounting ordered, their functions with respect to that company therefore ceased, if they ever had lawful right, and they thereafter had no more authority to collect debts due to that company than a stranger would have. If there exists any liability on the part of the appellants with respect to the transaction in question, that liability is to the receiver of the company, Mr. Wheeler, and not to the appellees. We perceive no ground upon which that portion of the decree can be sustained.

2. The amount received for mail service for the quarter ending October 1, 1893, was, with the exception of the sum of $453.20, earned by the Chicago, Peoria & St. Louis Railway Company prior to the appointment of the receivers on September 21, 1893, but received by the appellant William S. Hook subsequently to such appointment. The bill filed that day was the first demand by the trustee for possession of the road. It has been repeatedly held, under clauses similar to that contained in this mortgage, that the mortgagee is not entitled to the rents and profits of the mortgaged premises until he takes actual possession, or until possession is taken in his behalf by a receiver, or until, in proper form, he demands and is refused possession. Railroad Co. v. Cowdery, 11 Wall. 459; Gilman v. Telegraph Co., 91 U. S. 603; Bridge Co. v. Heidelbach, 94 U. S. 798; Teal v. Walker, 111 U. S. 242, 4 Sup. Ct. 420; Macalester's Adm'r v. Maryland, 114 U. S. 605, 5 Sup. Ct. 1065; Grant v. Insurance Co., 121 U. S. 105, 7 Sup. Ct. 841; Dow v. Railroad Co., 124 U. S. 652, 8 Sup. Ct. 673; Sage v.

Railroad Co., 125 U. S. 361, 8 Sup. Ct. 887. So that the complainant trustee, or the receivers as its representatives, have no right to the earnings prior to the filing of this bill. As to the amount earned since the bill was filed, there is no contention. The appellants concede the right of the appellees thereto. What right the receivers would have to the fund earned prior to the filing of the bill, if they represented judgment creditors, we do not find it necessary to determine. As we have before observed, the record discloses that certain intervening petitions, cross petitions, and bills (some of them filed in the cause of the Mercantile Trust Company against the St. Louis & Chicago Railway Company, of the nature of which suit we are not informed) were ordered to be consolidated with the principal cause for the foreclosure of the trust deed or mortgage. The record is wholly silent with respect to the nature of those petitions, cross petitions, and bills, and to the character which the petitioners, cross petitioners, and complainants therein assumed. We are only told that those proceedings, whatever they were, were consolidated with the principal suit. The stipulation under which the hearing was had reserved the right to either party to make part of the record upon such hearing any of the files in the consolidated cause, but from the certificate of evidence it appears that none of these intervening petitions or bills were presented in evidence or considered. We are therefore unable to say that the appellees represent creditors as well as the trustee. We cannot, therefore, adopt the suggestion of counsel that these intervening petitions, etc., represent "labor, supply, and traffic balance creditors." The fact does not appear from the record. We cannot assume it. It is, moreover, to be observed that by the stipulation the cause was heard "upon the petition and answer thereto," with right reserved to make part of the record certain exhibits mentioned. The petition here was in the nature of a bill in equity. The answer thereto asserted that the moneys in question received by the appellees for the earnings of the road prior to the receivership had been by the appellants "applied in the payment of debts contracted on account of the operating of such line of railroad, and which in equity should be paid." No issue was taken upon this answer, but the hearing proceeded upon the express agreement, as we construe it, that the facts stated in the petition and answer should be taken as true, the rule being that, in case of inconsistency between the bill or petition and the answer, the averments of the latter must be taken to be true. According to this record, therefore, the appellants have expended this money in the discharge of obligations incurred in the operation of the road which in equity should be paid. It would seem inequitable, under such circumstances, that they should be called upon to respond to the receivers for the amount so paid, unless possibly it might be claimed that they had no right, after the appointment of receivers, to receive or to so disburse the money as against representatives of creditors, appropriating it wholly to the payment of debts of their selection, when the debts discharged had only right to share ratably with other indebtedness of the corporation. We are, however, from this record, unable to

regard these receivers as representatives of others than the trustee of the mortgage, who is not entitled to the earnings prior to the receivership. The decree will be reversed, and the cause remanded for further proceedings in conformity with this opinion.