COX et al. v. TERRE HAUTE & I. R. CO.

CENTRAL TRUST CO. OF NEW YORK v. TERRE HAUTE & I. R. CO.'S RECEIVER.

(Circuit Court of Appeals, Seventh Circuit. October 6, 1904.)

No. 1,048.

1. RAILROAD—LEASE IN VIOLATION OF PUBLIC POLICY—RECOVERY OF RENTAL.
    A lease of a railroad which is void as contrary to public policy cannot be the foundation of any recovery of rentals.

2. SAME—INSOLVENCY OF LESSEE—EQUITABLE LIEN FOR PRIOR RENTAL.
    Where the lessee of a railroad operated the same without paying the rental therefor for a time prior to its being placed in the hands of a receiver in a suit to which the lessor was not a party, a claim for such rental cannot be established as an equitable lien upon a fund arising from the earnings of the road during the receivership, no part of the rental withheld by the lessee having come into the hands of the receiver.

3. SAME—RIGHTS OF MORTGAGEE—RECOVERY OF RENTAL FROM RECEIVER OF LESSEE.
    Where the mortgagee of a railroad, entitled to possession by the terms of the mortgage on default, commenced a foreclosure suit after the road had passed into possession of a receiver appointed for a lessee which had possession of the road under a void lease, but made no application in its own suit for a receiver, nor demand for possession, but permitted the road to be operated by the lessee's receiver until its sale, receiving monthly reports which showed that it was operated at a loss, it

cannot assert an equitable claim for the rental value of the road during such time against a fund in the hands of the receiver arising from the operation of another line owned by the lessee.

Appeal from the Circuit Court of the United States for the District of Indiana.

On June 4, 1889, the Terre Haute & Indianapolis Railroad Company (hereinafter called the Terre Haute Company), which then owned and operated a line of railway from Indianapolis, Ind., westerly to the state line, and also, under leases, operated the lines of certain other railway companies, entered into a contract of lease with the Indiana & Lake Michigan Railway Company (hereinafter called the Lake Michigan Company), a consolidated corporation of Indiana and Michigan organized in 1889, to construct and operate a railroad between South Bend, Ind., and St. Joseph, Mich., a distance of about 40 miles. Cotemporaneous therewith, and as part of the transaction, the Terre Haute Company acquired all of the stock of the Michigan Company, and the officers and directors of the latter were also officers and directors of the former company. The contract provided that the Lake Michigan Company should execute a mortgage upon its railway to secure $480,000 of bonds, and with the proceeds of the sale of the bonds construct the road —the bonds to be guarantied by the Terre Haute Company—and that upon completion the road should be turned over to the Terre Haute Company to be operated by it for the period of 99 years, the latter company to retain 75 per cent. of the gross receipts for its own use, and to appropriate the remaining 25 per cent. to the payment of taxes and the interest upon the bonded indebtedness stated, the surplus, if any, to be paid to the Lake Michigan Company. In the event of the insufficiency for the purposes stated of this 25 per cent. of the gross receipts, the Terre Haute Company agreed to advance the deficiency to the Lake Michigan Company by way of loan. In conformity with the agreement the Lake Michigan Company on September 2, 1889, executed its trust deed or mortgage to the Central Trust Company of New York, and to Josephus Collett, since deceased, as trustees, to secure $480,000 of its bonds, and with the proceeds of these bonds constructed the road, and in 1890 delivered possession to the Terre Haute Company under the contract. The latter company operated the road continuously from that time until the appointment of a receiver in this cause, November 13, 1896. The Terre Haute Company complied with the terms of the contract until September 1, 1896, when it defaulted in the payment of the semiannual interest due at that date upon the bonds of the Lake Michigan Company. It has paid nothing by way of rental for the use of the road since March 1, 1896. The gross income of the road received by the Terre Haute Company from March 1, 1896, to November 13, 1896, was $48,596.72, one-fourth of which amounts to $12,149.18. The interest of the Lake Michigan Company's bonds for the same period is $16,866.67. The operating expenses of that road paid by the Terre Haute Company during the same period were $52,875.62, thus exceeding the gross income by $4,278.90.

On October 1, 1892, the Terre Haute Company executed a somewhat similar lease with the Terre Haute & Peoria Railroad Company (hereinafter called the Peoria Company), which in 1893 was validated by an act of the Legislature of the state of Indiana. On October 30, 1896, Mark T. Cox and others, in behalf of the bondholders of the Peoria Company, filed their original bill in this cause, charging default by the Terre Haute Company under the lease with the Peoria Company; that for upwards of a year it had received and retained 30 per cent. of the gross earnings of that road, which, it was claimed, under the lease, belonged to the Peoria Company, and had mingled the moneys with its own funds. An injunction was sought from further misappropriation of the lease percentage of the Peoria earnings, and for specific performance of the contract, and that a receiver be appointed if that company should prove to be insolvent. The Terre Haute Company answered, admitting its insolvency; prayed for a receiver of its own road and of its leased lines. Thereupon, upon amendment of the bill, charging insolvency, a receiver was appointed, and in a similar proceeding in the federal court for the

Southern District of Illinois, a similar appointment was made for the Illinois property. No bill was filed or receiver appointed in any court of the state of Michigan with respect to that part of the Lake Michigan Road situated in that state. The order appointing the receiver directed the operation of all the lines of railway owned or leased by the Terre Haute Company; that the receiver keep separate accounts showing separately the gross earnings of each line of railway, whether owned or leased; that he set apart from the gross earnings of each leased line the percentage provided in the respective contracts of lease, to be rendered each lessor; that he deposit the amount in separate bank accounts; that no part of such percentage so set apart should be paid out or applied except on special order of the court; that, if the balance of the gross earnings of either of the leased lines should prove insufficient to meet operating expenses, the receiver should advance the deficiency out of the gross earnings of the main line owned by the Terre Haute Company, and, if they were insufficient therefor, he should apply to the court for instructions. In compliance with this order, on November 13, 1896, the Terre Haute Company surrendered to the receiver possession of all railways owned or leased by it. The Lake Michigan Road was thereafter operated by the receiver as part of the Terre Haute system until February 28, 1899. Neither the Lake Michigan Company nor the Central Trust Company were parties to that bill during the receiver's operation of the road.

On November 27, 1896, the appellant trustee filed its bill in the court below against the Lake Michigan Company and the Terre Haute Company for a foreclosure of its mortgage, and for enforcement of the guaranty by the Terre Haute Company of the bonded indebtedness. A similar proceeding was commenced in the United States Circuit Court for the Western District of Michigan. These bills pray for the appointment of a receiver, but no application therefor was made, and none was appointed. The Terre Haute Company answered, denying liability upon the ground that the contract of lease and the guaranty were ultra vires and void. On June 16, 1898, a final decree was rendered in the Indiana suit, and a few days later in the Michigan suit, foreclosing the mortgage and ordering a sale of the road, but also holding the guaranty of the bonds by the Terre Haute Company to be invalid. An appeal was taken by the Central Trust Company of New York from so much of the decree as exonerated the Terre Haute Company from its liability by reason of the guaranty. That decree was in all things affirmed by this court on January 2, 1900. 39 C. C. A. 220, 98. Fed. 666. The mortgaged property was sold December 8, 1898, for $100,000, to a committee of the bondholders, leaving a deficiency of over $450,000; and on January 13, 1899, the sale was confirmed, the amount of the deficiency decreed to be paid to the Central Trust Company, and deed directed to be executed and delivered.

On the same day an order was made in this suit directing the receiver to deliver possession of the road to the purchasers or their assigns, by which order it was provided "that neither this order, nor the surrender of possession by said receiver to said purchasers or their assigns, shall be construed to affect in any manner the fund now in the hands of the receiver, known as the 'Lake Michigan Fund,' and consisting of twenty-five per cent. of the gross earnings of said Indiana & Lake Michigan Railway while in the receiver's hands; but the court expressly reserves to itself the right to make further orders concerning said fund, and the said Central Trust Company of New York is now granted leave to file an intervening petition in this cause touching the disposition of said Lake Michigan fund now in the receiver's hands."

On February 28, 1899, pursuant to the order, the receiver surrendered possession of the Lake Michigan Railroad to the St. Joseph, South Bend & Southern Railroad Company, a corporation organized by the purchasing bondholders. On January 31, 1899, pursuant to the leave reserved, the appellant filed its intervening petition in this cause, praying to be paid by the receiver all of the Lake Michigan funds in his hands, being 25 per cent. of the gross earnings of the road throughout the receiver's possession; also the sum of $12,-149.18 for the use of the Lake Michigan Road by the Terre Haute Company from March 1, 1896, to November 13, 1896. This, it claimed, should be paid to it as trustee for the holders of the Lake Michigan Company bonds, and applied pro tanto to the unpaid portion of the bonds.

The gross earnings of the Lake Michigan Company's road during its possession by the receiver were $153,753.43. He expended in operating the property $160,101.10. The 25 per cent. of the gross earnings deposited by him, under the order, to the credit of the Lake Michigan fund, amounts to $38,-438.37, less paid, under order of court, for taxes on the property, $4,424.56; leaving a balance in that fund of $34,013.81. From March 1, 1896, to November 13, 1896, the gross income of the road, received by the Terre Haute Company, was $48,596.72, and the operating expenses paid by that company were $52,875.62. The main line owned by the Terre Haute Company was operated by the receiver at a profit, and he has in possession more than sufficient to pay the amount claimed for the use of the Lake Michigan Railway from March 1, 1896, to November 13, 1896. The deficiency in the earnings of the road was paid by the receiver out of the earnings of the line of road owned by the Terre Haute Company.

During the receiver's possession of the Lake Michigan Road, statements of the gross earnings, the operating expenses, and the amount of the Lake Michigan fund were furnished monthly to the chairman of the bondholders' committee of the Lake Michigan Road.

On May 23, 1903, upon final hearing, the intervening petition was dismissed for want of equity ([C. C.] 123 Fed. 439), from which decree this appeal is taken.

John S. Miller, for appellant.
John G. Williams, for appellee.

Before JENKINS and GROSSCUP, Circuit Judges, and BUNN, Ditrict Judge.

JENKINS, Circuit Judge (after stating the facts as above). The agreement or lease was ultra vires the Terre Haute Company, was contrary to the public policy of the state of Indiana, and was void. Central Trust Company v. Indiana & Lake Michigan Railroad Company, 39 C. C. A. 220, 98 Fed. 666; Central Transportation Company v. Pullman's Palace Car Company, 139 U. S. 24, 11 Sup. Ct. 478, 35 L. Ed. 55. Therefore no court should lend its assistance in any way to carry out the terms of this illegal contract, or to enforce any claimed rights directly springing therefrom. Pullman's Palace Car Company v. Central Transportation Company, 171 U. S. 138, 18 Sup. Ct. 808, 43 L. Ed. 108; McMullen v. Hoffman, 174 U. S. 639, 19 Sup. Ct. 839, 43 L. Ed. 1117. So far, therefore, as any claim here asserted is dependent upon this illegal and void contract, it cannot be approved. East St. Louis Connecting Railway Company v. Jarvis, 34 C. C. A. 639, 92 Fed. 735. One may recover property or money parted with on the faith of such a contract. Pullman's Palace Car Company v. Central Transportation Company, 171 U. S. 138, 18 Sup. Ct. 808, 43 L. Ed. 108; Gilbert v. American Surety Company, 57 C. C. A. 619, 121 Fed. 499, 61 L. R. A. 253. But that question is not presented here, the property having been returned.

The petition here seeks to obtain a fund arising from setting apart the 25 per cent. of the gross earnings. This fund was tentatively set aside by the court and maintained intact to await the determination of the question of right. The appellant's claim thereto arises either under and because of the illegal contract, or because it may rightfully claim compensation out of the fund for the value of the use of the road during its possession by the Terre Haute Company or by its receiver. In the former case the claim cannot be sustained. "Ex turpi causa non

oritur actio." The claim in the latter case is to be looked at in two aspects: First, as a claim for the value of the use of the road from March 1, 1896, to November 13, 1896, during the time of its possession by the Terre Haute Company; second, for the value of the use of the road from November 13, 1896, when the receiver took possession, until February 28, 1899, when, under order of the court the receiver redelivered possession. With respect to the first: Assuming that the appellant, as trustee, may assert a claim for the value of this use, either by virtue of its mortgage, or of the decree adjudging payment to it of the deficiency upon the sale, there is one conclusive answer to the claim, namely, that the fund in court arose, not from the earnings of the road during that period, but represents gross earnings accruing subsequently to the latter date, and during its operation by the receiver. The appellant can have no equitable lien upon this fund for the misappropriation of moneys by the Terre Haute Company, no part of which has come to the receiver.

With respect to the second claim: By the mortgage the rents, issues, and profits of the railway were pledged to the appellant trustee as security for the payment of the bonds. This was coupled with a provision that, until default in payment of the interest and principal of the bonds, the Lake Michigan Company should remain in undisturbed possession and management of the road. The trustee is not entitled to the rents and profits of the mortgaged premises under such a provision until he takes actual possession, or until possession is taken in his behalf by a receiver, or until, in proper form, he demands and is refused possession. Hook v. Bosworth, 12 C. C. A. 208, 64 Fed. 443, and authorities cited. No step was taken by the Central Trust Company which would entitle it to the income of the road under this provision. There was default in the payment of interest by the Terre Haute Company on the 1st of September, 1896, and continuously thereafter. The Central Trust Company commenced foreclosure on November 27, 1896, praying, among other things, for a receiver, but at no time made application for one. On the 13th of November the railway passed into the possession of the receiver in this suit under the bill against the Terre Haute Company. From that time until February 28, 1899, when possession was surrendered by the court to the purchasing bondholders upon foreclosure of the trust deed to the Central Trust Company, no demand was made for the possession of the road, or any claim asserted for rentals. During all this period these bondholders received monthly statements from the receiver of the gross earnings and operating expenses of the road, which showed that during that period the operating expenses exceeded the income. Under these circumstances, knowing that this road was operated at a loss, it must be assumed that the Central Trust Company was content not to assume the burden of the operation of the road, but was content to allow that burden to rest upon the receiver of the Terre Haute Company. The court below would doubtless have directed delivery of possession, had it been demanded, because the Central Trust Company was entitled thereto. It cannot, therefore, now rightfully claim this fund for the use and occupation of the road upon the basis of its rental value, when the fund does not represent net

earnings from the operation of the road. United States Trust Company v. Wabash Western Railway Company, 150 U. S. 287, 14 Sup. Ct. 86, 37 L. Ed. 1085.

Nor can the Central Trust Company claim this fund as a trust fund appropriated to the payment of the interest upon the bonds, because such claim can only be spelled out through and under the provisions of an illegal contract. The fund was set apart from the gross earnings, that it might be kept intact to render to the parties entitled upon the determination of the validity of the agreement or lease. The railway having been operated at a loss, this fund does not represent profits, but in fact represents so much money received from the operation of the line owned by the Terre Haute Company. There is therefore no equity in appropriating this fund in execution of an illegal and forbidden agreement.

The decree is affirmed.