HENRY SEIBERT *vs.* MINNEAPOLIS & ST. LOUIS RY. CO. *et al.*

Argued Dec. 15, 1892. Decided Jan. 13, 1893.

**Prior Mortgagee not Compelled to Foreclose.**

    A prior mortgagee cannot be required against his will, at the instance
of a subsequent mortgagee, to foreclose his mortgage.

**Railroad may Pledge its Income and Stipulate to Give Possession of
its Road.**

    Under 1878 G. S. ch. 34, § 70, a railroad company may, in a mortgage
executed by it, pledge the income of the property; and, to make such
pledge effectual, may stipulate in the mortgage that upon default the
trustee named in the mortgage may take possession, operate the railroad,
and receive its earnings. 1878 G. S. ch. 75, § 29, does not apply to such
a mortgage.

**How the Mortgagee may Obtain the Possession.**

    Under such a stipulation, the trustee, upon default, may, without
bringing an action to foreclose, take possession; and, if he be prevented,
may have an action to be put in possession.

**How a Receiver in Possession shall Apply Net Earnings.**

    Where the trustee in the junior of a series of such mortgages, each
containing such a pledge and stipulation, brings an action to foreclose,
making the prior mortgagees parties defendant, and obtains the appoint-
ment of a receiver, to take possession of and operate the railroad and re-
ceive its earnings, the senior mortgagees may apply to the court to have
the receiver hold for and pay to them so much of the net earnings as is
covered by their mortgages, and are thereupon entitled to receive the
same.

Appeal by plaintiff, Henry Seibert, trustee, from an order of the
District Court of Hennepin County, *Lochren,* J., made March 9, 1892,
directing him to pay to Robert Benson and others the interest due on
their bonds.

The Minneapolis & St. Louis Railway Company on October 12,
1882, made its mortgage or deed of trust to the Central Trust Com-
pany of New York upon all its railway lines and property to secure
the payment of four thousand bonds of $1,000 each. This was called
the improvement and equipment mortgage and was junior and sub-
ject to several prior mortgages. One of these prior mortgages was

made June 1, 1881, to the said Central Trust Co., upon the branch of its railway known as the Pacific Extension, to secure the payment of six thousand bonds of $1,000 each.   Henry Seibert was appointed trustee in the improvement and equipment mortgage of October 12, 1882, in place of the Central Trust Co., pursuant to certain provisions in that mortgage.   He brought this action June 28, 1888, to foreclose this junior mortgage, and on the same day William H. Truesdale was appointed receiver to take possession of the entire property and to manage and operate the railway, keep accounts, pay from the receipts the necessary expenses, and hold the balance subject to the order of the court.   Robert Benson and fifty-five others, holders of six hundred and ninety-one of the Pacific Extension bonds, applied September 14, 1889, and were admitted, defendants in the action.   On their petition, the court made an order March 9, 1892, directing Truesdale, the receiver, to pay Robert Benson and his associates, out of the net earnings of the Pacific Extension branch of the road, the interest due April 1, 1891, upon their bonds, and interest on the interest after due amounting to $43,947.60.   The court said:   "Had plaintiff's mortgage been strictly subordinate, and had he desired to seize for himself the income and earnings pending his suit to foreclose, he might have done so by omitting to make the prior mortgagees parties, and by alleging and showing inadequacy of security, and having a receiver appointed solely in his own interest. In such case he would hold all income and net earnings so obtained, until some mortgagee, having a prior or better right, should intervene in the suit and claim them thenceforward or seize them in a separate suit.   In this case however, because of the peculiarity of plaintiff's mortgage, on which he bases his claim to a superior lien and equity as to certain classes of property over prior mortgages, it was probably necessary that he should make such prior mortgagees parties to his suit at the beginning.   Having done so, and had the receiver appointed in their interest as well as his own, they have been from the beginning of the suit, in a position to assert their equities to the income and net earnings, or any money or other property becoming the subject of adjudication.   *Miltenberger* v. *Loyansport Ry. Co.,* 106 U. S. 286; *Central Trust Co.* v. *Wabash, St. L. & P. Ry. Co.,*

30 Fed. Rep. 332; *Howell* v. *Ripley*, 10 Paige, 43." From this order plaintiff appeals.

*Thomas F. Withrow, Julien T. Davies* and *John M. Shaw*, for appellant.

The mortgagee of real estate is not, under the statute of Minnesota, in any case entitled to possession before foreclosure. 1851 R. S. ch. 74, § 11; 1878 G. S. ch. 75, § 29; *Lowell* v. *Doe*, 44 Minn. 144; *Mack* v. *Wetzlar*, 39 Cal. 253; *McMillan* v. *Richards*, 9 Cal. 365; *Dutton* v. *Warschauer*, 21 Cal. 609; *McGurren* v. *Garrity*, 68 Cal. 568; *Johnson* v. *Sherman*, 15 Cal. 287; *Carpentier* v. *Brenham*, 40 Cal. 221; *Vason* v. *Ball*, 56 Ga. 270; *Newton* v. *McKay*, 30 Mich. 380.

A railway in the State of Minnesota, including the rolling stock and all other appurtenant property, for the purposes of a mortgage, is real property. *Gue* v. *Tide Water Canal Co.*, 24 How. 257; *Wilkinson* v. *Hoffman*, 61 Wis. 637; *Chicago & Alton R. Co.* v. *People*, 67 Ill. 11; *Rice* v. *St. Paul & P. R. Co.*, 24 Minn. 464; *Rohrback* v. *Germania Fire Ins. Co.*, 62 N. Y. 47; *Buchner* v. *Chicago, M. & N. Ry. Co.*, 60 Wis. 264.

A contract in a mortgage of a railway which attempts to confer upon a mortgagee a right to enter into the possession after default and before foreclosure, is void as against the public policy of the state as to all real property, and especially as to property charged with the performance of public duties. Jones, Mortg. §§ 251, 1039; *Teal* v. *Walker*, 111 U. S. 242; *Chicago, R. I. & P. Ry. Co.* v. *Union Pacific Ry. Co.*, 47 Fed. Rep. 15; *Central Transp. Co.* v. *Pullman's Car Co.*, 139 U. S. 24; *Rochester Ins. Co.* v. *Martin*, 13 Minn. 59, (Gil. 54;) *Stewart* v. *Erie & W. Transp. Co.*, 17 Minn. 372, (Gil. 348;) *Thomas* v. *Railroad Co.*, 101 U. S. 71.

A court of equity may take possession of a mortgaged railway and operate it pending a foreclosure, but this power will be exercised only when the mortgagee is seeking a foreclosure and shows that his security is inadequate, and that the party liable for the mortgage debt is insolvent. *Hollenbeck* v. *Donnell*, 94 N. Y. 342; *Kountze* v. *Omaha Hotel Co.*, 107 U. S. 378; *Freedman's Saving Co.* v. *Shep-*

*herd,* 127 U. S. 494; *Union Trust Co.* v. *St. Louis, Iron M. & S. Ry. Co.,* 5 Dill. 1; *Astor* v. *Turner,* 11 Paige, 436; *Mahon* v. *Crothers,* 28 N. J. Eq. 567; *Eslava* v. *Crampton,* 61 Ala. 507.

The plaintiff did not have the receiver appointed in the interest of the defendant as well as his own in such sense as to make the appointment a seizure of the property under their mortgages as well as his own, and attach the lien of their mortgages as well as his own, to the income. *De Graff* v. *Thompson,* 24 Minn. 452; *American Bridge Co.* v. *Heidelbach,* 94 U. S. 798; *Franklin* v. *Greene,* 2 Allen, 519; *Landis* v. *Olds,* 9 Minn. 90, *(*Gil. 79.)

The net profits arising from the operation of a railway follow the possession and must be paid to the party who holds it, or at whose instance or under whose mortgage it is held by the court. *Spencer* v. *Levering,* 8 Minn. 461, (Gil. 410;) *Adams* v. *Corriston,* 7 Minn. 456, (Gil. 365;) *Berthold* v. *Holman,* 12 Minn. 335, (Gil. 221;) *Hill* v. *Edwards,* 11 Minn. 22, (Gil. 5;) *Greve* v. *Coffin,* 14 Minn. 345, (Gil. 263;) *Gale* v. *Battin,* 12 Minn. 287, (Gil. 188;) *Johnson* v. *Lewis,* 13 Minn. 364, (Gil. 337;) *Everest* v. *Ferris,* 16 Minn. 26, (Gil. 14.)

*Woods & Kingman; Keith, Evans, Thompson & Fairchild; Turner, McClure & Rolston; H. C. Truesdale; H. B. Turner;* and *Lusk, Bunn & Hadley,* for respondents.

The receiver was not the plaintiff's receiver, and the earnings in court are not, by the mere fact that plaintiff started the suit, the plaintiff's moneys. The receiver represents all the parties to the suit. No more is he the agent of the plaintiff than of any other party. *Wabash, St. L. & P. Ry. Co.* v. *Central Trust Co.,* 22 Fed. Rep. 272; *Central Trust Co.* v. *Wabash, St. L. & P. Ry. Co.,* 23 Fed. Rep. 863; *Davis* v. *Duke of Marlborough,* 2 Swanst. 125; 2 Story's Eq. § 829; *Williamson* v. *Gerlach,* 41 Ohio St. 682; *Miltenberger* v. *Logansport Ry. Co.,* 106 U. S. 286; *Cortleyeu* v. *Hathaway,* 11 N. J. Eq. 42; *Galveston Railroad Co.* v. *Cowdrey,* 11 Wall. 459; *Dow* v. *Memphis & L. R. R. Co.,* 124 U. S. 652.

We deem it unnecessary to consider what rights a mortgagee of real estate has before foreclosure, or whether a railroad mortgage

is a real estate mortgage, or whether a provision that the mortgagee may take possession on default, is void as against public policy.

GILFILLAN, C. J. This is an action to foreclose a mortgage executed by the railway company defendant to the Central Trust Company of New York, as trustee, (in whose place plaintiff has been substituted as trustee,) to secure bonds issued by the company. The mortgage is junior to eight other mortgages, each covering some portion of the line of railroad, and the franchises and movable property belonging thereto, included in the plaintiff's mortgage. Each of the nine mortgages includes a pledge of the income, rents, issues, and profits of the division or section of railroad and other property mortgaged, and each contains a clause authorizing the trustees named in it, in case of default for four months in the principal or interest of the bonds secured by it, to enter upon the railway and premises thereby mortgaged; to manage and conduct the business of the railway; to collect and receive the tolls, rents, issues, and profits thereof, and apply the net proceeds in payment, first of the interest, and then of the principal, of such bonds. So that, so far as rights conferred by the mortgages are concerned, they all stand as to the property covered by more than one on the same footing, except as affected by priority of execution. Default having been made in plaintiff's mortgage, he brought this action to foreclose it, joining as parties defendants the trustees in the eight prior mortgages. The complaint sets forth all the mortgages; advances a claim to priority of lien in respect to rolling stock and equipments purchased and paid for with the proceeds of bonds secured by plaintiff's mortgage; asks, in effect, for a foreclosure of all the mortgages, and an adjudication as to the order of priorities; and, having alleged that the mortgagor is insolvent, and the plaintiff's security inadequate, that the provisions of the prior mortgages confer on the respective trustees the right, under certain conditions attending defaults, to take possession of the mortgaged property, and there is reason to believe that attempts to take possession will be made unless the court by its receiver assumes control for the benefit of all the parties; asks for the appointment of a

receiver pending the action, charged with the duty of taking posses-
sion of and operating the railway, and such other duties as in the
judgment of the court, from time to time, will best promote the in-
terests of all the parties to the action. Thereupon, on motion of
plaintiff, none of the defendants except the mortgagor having ap-
peared, a receiver was appointed. The order appointing him di-
rected him to pay out of moneys coming into his hands the necessary
expenses of operating and maintaining the railway, but to make no
other disbursements until ordered by the court. Afterwards the
trustees in the several prior mortgages answered. To state the an-
swers generally, so far as they bear upon the order appealed from,
they deny the right of priority claimed by plaintiff, the insolvency
of the mortgagor, the insufficiency of plaintiff's security, his right to
have their mortgages foreclosed, and ask to have the action dismissed.
After these answers Benson and other holders of bonds under the last
mortgage prior to plaintiff's were, on their own application, made
parties defendant. It is immaterial that they came in as parties
after the action was commenced, or when they came in. Their rights
are the same, so far as the question involved in this appeal is con-
cerned, as those of the trustee in the mortgage securing their bonds.
If he, had they remained out, would have been entitled to receive the
money for the payment of interest coupons on the bonds held by
them, they were so entitled. Prior to being admitted as formal par-
ties, they petitioned the court for an order requiring the receiver to
keep a separate account of that part of the railway and property
covered by the mortgage securing their bonds, and that the surplus
above expenses thereof be applied in payment of interest on their
bonds. A similar petition was presented by the trustee in their mort-
gage. The court directed the receiver to keep such account, and to
hold the surplus separate and unused until the further order of the
court; and it seems that, upon the direction of the court, such sep-
arate accounts were kept as to each division or section of the rail-
road covered by the respective mortgages. They also, before being
formally admitted as parties, petitioned that such surplus, then in
the hands of the receiver, be used in paying the interest on their
bonds. This was denied, but, upon being renewed, it was afterwards

granted, and five similar orders were made after they became parties.  After several of such orders the plaintiff filed what is styled an "amendment and supplement" to the complaint.  The only point in this bearing on this appeal was in its asking, in effect, that the receivership be held to be for plaintiff's sole benefit, and that all the moneys realized from it be paid upon his mortgage.  The trustee in the mortgage securing the bonds held by Benson and the other bondholders defendant thereupon amended his answer, asking that the interest on the bonds secured by its mortgage be paid out of the moneys coming into the hands of the receiver, and that the court take or cause to be taken by the receiver such action as will give the lien created by the pledge of income; and the bondholders filed similar answers to the plaintiff's complaint as amended.  After this, the order appealed from, directing the receiver to pay the interest coupons upon the bonds secured by that mortgage, was made.  Plaintiff appeals.  It appears that, before making the order, the court was satisfied that after making such payment there would still remain in the hands of the receiver net earnings of the division or section of road covered by that mortgage, to such amount as could be regarded as the earnings of the rolling stock and equipment, upon which plaintiff claims a priority of lien; thus reserving the determination of such claim of priority as to the net earnings so left with the receiver.

The claim of the plaintiff in respect to the earnings of the entire property covered by his mortgage is, in effect, that, notwithstanding his mortgage is junior in date to all the others, and that each of the others contains the same pledge of net income, and the same provision for making the pledge effectual, to wit, that giving the right to take possession, as his mortgage contains, yet because in his action to foreclose, and on his motion, a receiver was appointed, he is entitled to have all the net earnings appropriated to his mortgage, and the other mortgagees excluded from any benefit thereof, unless they shall consent to his demand that their mortgages be foreclosed, and that the court below was in error in recognizing any right of the other mortgagees in respect to such net earnings except they consent to such foreclosure; in other words, that having, in order to afford a remedy to plaintiff, seized upon the mortgagor's only source of in-

come, so that it cannot meet the interest falling due on the prior mortgages, thus bringing about a compulsory default, the court has no power to so adjust the remedy to plaintiff that it shall not work wrong to the prior mortgagees, and so that it shall not be a remedy to him at their expense.

The claim is certainly a bold one.

We shall not find it necessary to follow the briefs in the case, nor to discuss all of the many propositions contained in them.

There is no rule or principle in law or equity upon which a court may require a senior mortgagee, against his will, at the instance of a junior mortgagee, to foreclose his mortgage before it is due. The instances in which a court may "accelerate payments," to use the terms in appellant's brief,—that is, may require a creditor, even when unsecured, to receive his debt before it is due,—are few, and they depend on statutes. Such are cases under bankrupt and insolvent laws, and laws for dissolving and closing the affairs of corporations. Cases of junior lienholders upon the foreclosure of a prior lien depend on a different principle.

Conceding that the trustees defendants might, had they so elected, have turned the action into one to foreclose their prior mortgages, they could not be required to do so.

Whether 1878 G. S. ch. 75, § 29, to the effect that "a mortgage of real property is not to be deemed a conveyance, so as to enable the owner of a mortgage to recover possession of the real property without a foreclosure," applies only to a mortgage of the title, or applies as well to one attempting to mortgage also the income and the right of possession,—that is, one which, as part of the security, gives to the mortgagee the right to take possession, and receive and apply the rents,—we need not determine. Nor is it necessary to determine whether a railroad, with all its rolling stock and personal property, when considered as an entirety, is to be regarded as real estate, so that a mortgage of it shall (unless excepted by some other statute) come within that section; for, if that section is to be held as rendering of no effect a stipulation in an ordinary mortgage giving the mortgagee the right to take possession before foreclosure, a railroad mortgage is clearly excepted from its operation. 1878 G. S. ch. 34,

§ 70, (being the same in this respect as 1866 G. S. ch. 34, § 40,) provides: "Such corporation has the power to borrow money on credit of the corporation, and may execute bonds or promissory notes therefor; and, to secure the payment thereof, may pledge the property and income of such company." The words "such corporation" refer to such as are mentioned in the section immediately preceding, to wit, "any railroad corporation heretofore or hereafter incorporated, whether under the provisions of this title or by special charter."

In thus giving authority to pledge income, the legislature intended something more than authority merely to make a pledge in form and words, which should have no effect. It intended that the mortgage or instrument pledging may contain the stipulations usual in railroad mortgages, and necessary to make the pledge effectual. It was the rule of law then, as it is now, that such a pledge does not operate upon the income while the mortgagor is permitted to remain in possession of the body of the property, receiving and disbursing its earnings; and the enactment quoted was made with that rule in view. So that, though there are no express terms authorizing the insertion of a stipulation that the mortgagee may take possession and receive the earnings, it is to be implied from authority to pledge the income, for without it no such pledge could be of any effect. In these mortgages, therefore, the pledge of income, and the clause authorizing the trustees to take possession, are valid.

It is contended that, even with this clause in a mortgage, a court of equity will not take possession and operate a railroad, at the instance of a mortgagee, except in an action to foreclose his mortgage. And that is undoubtedly correct. Courts do not enter upon the conduct of business merely for the purpose of carrying it on and making profits for parties.

In the limited cases in which a court will, through its officers or receivers, manage a business, it is only when necessary for the preservation of the interests and rights of the parties before it for adjudication.

But there can be no doubt, in the case of a railroad mortgage with a clause authorizing the mortgagee to take possession, that he may,

upon the condition stipulated, take the possession; and, if he is prevented, may, without bringing an action to foreclose, apply to a court not to take and hold possession for him, but to put him in possession. It was because of this right to be put in possession through an action, independent of any foreclosure action, that this court, in *Rice v. St. Paul & P. R. Co.*, 24 Minn. 464, held, even in an action to foreclose, that such a clause in the mortgage is no ground for the appointment of a receiver. The correctness of the decision in that case, and of some of the reasoning, except so far as it holds that the mortgagee in a mortgage with such a clause may have an action to be put in possession, may be doubted.

But suppose the case of an action to foreclose by a junior mortgagee, and the appointment, upon his application, of a receiver to take possession of the property and receive the income for his benefit only, while there are senior mortgagees having the right to take and hold possession and receive such income; we can easily conceive that, if they acquiesce in the possession of the property and the receipt of the income by the receiver for purposes other than their mortgages, making no move towards asserting their claims, they would have no right to any part of the income, any more than had they permitted the mortgagor to remain in possession, and to receive and disburse it for its general purposes. Such was the case of *Sage v. Memphis & L. R. R. Co.*, 125 U. S. 361, (8 Sup. Ct. Rep. 887,) in which the mortgagees had laid by until all the moneys they sought to have paid to them had been earned by the receiver, and he had been discharged. The purpose of that action was only to satisfy the plaintiff's claim, and for that purpose the receiver was appointed and the income was earned; but the purpose of this action is, in part at least, to adjust the rights of all the parties, as well to the income as to the body of the property. For the purpose of adjusting their rights to the income, it was necessary for the court to lay hold upon, not merely that portion which the plaintiff might be entitled to, but that which all the parties were entitled to. The order appointing the receiver not assuming to appropriate it to plaintiff, the court was to be regarded as taking and holding it for all the parties, as their rights and interests might appear, at least so long

as none of them made objection. If, however, the receiver is appointed solely for the benefit of the plaintiff, in an action to which the senior mortgagees of income are not parties, and they do not choose to acquiesce, what are they to do? They cannot take possession from the mortgagor; the action of the court has disabled them to do that. Shall they sue the receiver for the possession? The court would hardly permit that. Shall they petition the court to discharge him, or direct him to turn the property over to them? There might be reasons,—there were in this case,—growing out of questions of priority as to part of the property, and to the earnings properly attributable to that part, why the court could not properly grant such a petition. Being unable to take the possession from the mortgagor or from the receiver, what, then, can they do, except, if they are not parties to the action, to come in by intervention, or, if they are parties, to petition the court that there be paid to them by the receiver, out of the earnings which shall come into his hands, such part as, but for his appointment, they would have had the right to receive and apply on their mortgages? The right of the prior mortgagees to take such a way to assert their claim, and subject the earnings to their lien, was recognized in the *Sage Case*, the court saying: "There was no moment pending the receivership when these trustees, upon the request of the holders of a majority of the bonds, might not have appeared in this suit, or in a separate suit in the same court, and asked that the receiver hold for them as well as Sage, or that he be discharged, and they be put into possession of the mortgaged property, for the purpose of sale pursuant to the mortgage."

When such mortgagees are in the action, and so in position to make their demand upon the court, it is entirely immaterial in what form it is made, so that it is clearly made, and presents to the court the ground of their claim, if it be not already before it.

And at whose instance the receiver was appointed, and on what ground he was appointed, are wholly immaterial. Their right to demand that the earnings which shall come into the hands of the receiver shall be held for and paid to them does not depend on those things, but on the facts that, by taking the property through its re-

ceiver, the court has placed itself, so far as such senior mortgagees are concerned, in the position of the mortgagor, and that their only remedy is by application to the court.

It is unnecessary for us to consider, and we will not do so, whether the court, under its general power to preserve securities which it has taken into its possession, might not, out of the income, pay the interest on the prior mortgages, in order to keep down the incumbrances.

Order affirmed.

(Opinion published 53 N. W. Rep. 1151.)