HAEHNLEN et al. v. DRAYTON et al.

(Circuit Court of Appeals, Third Circuit. December 28, 1911.)

No. 15 (1,561).

1. CORPORATIONS (§ 566*)—RECEIVERS—INCOME—RIGHT TO.

A bill by an insolvent corporation's judgment creditor, brought for receivership in behalf of all the creditors, "secured and unsecured," was a general creditor's bill, and income derived by the receivers belongs to the corporation's bondholders as against the judgment creditors, under foreclosure had on a cross-bill.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2283–2286; Dec. Dig. § 566.*]

2. RECEIVERS (§ 189*)—ACTIONS—FORECLOSURE—ATTORNEY'S FEES.

Attorneys who filed a cross-bill on receivership against an insolvent corporation were properly allowed a fee, though a decree thereunder was set aside for want of notice to the bondholders' trustee, where a substituted decree under which the property was sold was founded on a cross-bill.

[Ed. Note.—For other cases, see Receivers, Dec. Dig. § 189.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from the Circuit Court of the United States for the Eastern District of Pennsylvania.

Bill by W. Heyward Drayton, 3d, against the Holmesburg, Tacony & Frankford Electric Railway Company and others. From a decree, Walter L. Haehnlen and others appeal. Reversed.

Charles L. McKeehan and Joseph S. Clark, for appellants.

George Quintard Horwitz, John C. Bell, and John G. Johnson, for appellee receivers.

George Quintard Horwitz and John G. Johnson, for appellees Disston and others (bondholders' committee), Drayton, Atlee, and Richards.

Before GRAY and LANNING, Circuit Judges, and CROSS, District Judge.

CROSS, District Judge. On November 1, 1909, the Holmesburg, Tacony & Frankford Electric Railway Company, which owned and operated a trolley line in the city of Philadelphia, defaulted in the payment of interest upon its mortgage bonds, and on November 10th of that year, W. Heyward Drayton, 3d, J. Ernest Richards, and George B. Atlee, severally recovered judgments against said railway company. On November 11th Drayton filed a bill of complaint against the company "upon his own behalf and on behalf of all other parties in like interest," substantially alleging, among other things, that the company was incorporated in 1890; that it constructed and operated a railway in the city of Philadelphia; that on May 1, 1895, it issued $400,000 of 5 per cent. bonds secured by a first mortgage upon its railway lines and property, real and personal, to the West Philadelphia Title & Trust Company, as trustee; that on September 18, 1906, it guaranteed the principal and interest of $650,000 of first mortgage 5 per cent. bonds of the Philadelphia, Bristol & Trenton Street Railway Company; that on August 2, 1909, all of the property of said last-mentioned company was sold under foreclosure; that there remained due on each bond, after applying the net proceeds of sale to said bonds, the sum of $408; that the complainant had recovered, upon said guaranty, a judgment against the defendant, the Holmesburg, Tacony & Frankford Electric Railway Company; that the earnings of that company were insufficient to meet its current expenses and fixed charges; that interest which became due November 1, 1909, on its mortgage bonds, was unpaid; that it was insolvent, and had no funds on hand to meet its indebtedness accrued and to accrue; that it had other liabilities which would shortly be reduced to judgment; that George B. Atlee and J. Ernest Richards had also recovered judgments against the defendant which there were no funds to meet; that other creditors were pressing the defendant and threatened to levy attachments upon its rolling stock and supplies; that the earnings of the defendant company were not sufficient to meet the operating expenses and fixed charges already accrued and to accrue, and that individual creditors will assert their claims in different courts, attempts will be made to secure judgments and priorities, levies and attach-

ments will be made upon the rolling stock, materials, and supplies indispensable to the operation of defendant's continuous line of railway, and the business of the defendant as a common carrier will be interfered with and prejudiced, and the defendant corporation prevented thereby from properly discharging its duties to the public as a common carrier of passengers over and along its said continuous line of railway, and the public greatly inconvenienced and damaged, resulting in irreparable loss and injury to all the creditors and holders of the stock and bonds of the said company unless the trust estate be preserved as a valuable single trust fund by adequate judicial protection by means of the intervention of a receiver, until such time as adequate financial arrangements can be effected, which, under the financial conditions existing up to the present time, have been practically impossible to accomplish. That under these circumstances the intervention of a court of equity by the appointment of a receiver or receivers to take charge of and protect the property of the said defendant company, to continue its business and to account for the income thereof until the final decree of the court in the premises is imperatively required. Wherefore, as your orator is without full and adequate remedy at law and can only have relief in equity, he files this bill of complaint in behalf of himself and all other creditors of defendant corporation, and prays for equitable relief as follows:

"That the rights of your orator and all the other creditors of the said defendant company, both secured and unsecured, in and to the property of the said defendant company, may be ascertained and protected; that the court will administer the estate constituting the entire railway and property of the defendant, and for such purpose will marshal its assets and ascertain the respective liens and priorities existing upon each and every part of the said lines, and the amounts due, and the rights, liens, and equities of each and all the creditors of said defendant company."

Following the above are prayers for an injunction forbidding interference with the receiver, and for the issuance of process against the defendant company.

Simultaneously with the filing of the foregoing bill of complaint, the defendant filed an answer admitting the facts set forth in the bill, and on the same day receivers were appointed, with general powers and without reference to any special rights of the complainant, who took possession of its assets and operated the road from November 11, 1909, to June 16, 1910. On the 24th of January, 1910, a bondholder's committee, representing less than a majority of the mortgage bonds of the defendant, intervened as party defendants and filed a cross-bill, without notice, however, to the trustee under the mortgage, or to the remaining bondholders, to foreclose the mortgage and impound the income of the road from that date. On the same day the receivers, Drayton and the Holmesburg, Tacony & Frankford Electric Railway Company, answered the cross-bill admitting its allegations, and thereupon a decree of foreclosure and sale of the property of the railway was entered. Four days afterwards the trustee under the mortgage filed a petition praying that the decree thus entered might be vacated, and on the same day a committee representing a majority of the bondholders filed a petition asking for the discharge of the re-

ceivers. The court permitted the cross-bill to stand, ordered the decree to be vacated, and allowed the trustee and the last-mentioned bondholders to intervene therein as complainants, without being bound by its admissions as to the right of Drayton and the other judgment creditors to the income prior to January 24, 1909. Moreover, the receivers were continued in office. Subsequently a new decree was prepared, in which the counsel of all of the different interests joined. under which a sale was subsequently made by the trustee named in the mortgage, rather than by the receivers, as had been provided by the vacated decree.

[1] Of the two questions now presented to this court, one is whether the net income derived by the receivers from their operation of the road between November 11th and January 24th, belongs to Drayton and the other judgment creditors, or to the bondholders. Drayton and the other judgment creditors claim that it belongs to them, and the appellants that it belongs to the bondholders. The court below awarded it to the judgment creditors. This we think was erroneous, because notwithstanding the bill formally states that it was filed by Drayton in his own behalf and in behalf of all other parties in like interest, the structure of the bill, including its prayers, conclusively shows that it was in no sense a judgment creditor's bill, but a general creditor's bill, under which the court below was not only authorized but required to administer the property and marshal its assets equitably for the benefit of all of its creditors. The court took possession of the assets of an admittedly insolvent corporation, not for the benefit of the complainant and the other judgment creditors named in the bill of complaint—the court was not asked to do that—but for and in behalf of all the creditors of the corporation, "secured and unsecured." The complainant explicitly asks that his right and the rights of all the other creditors of the defendant company, "both secured and unsecured, in and to the property of the said defendant company, may be ascertained and protected; that the court would administer the estate constituting the entire railway and property of the defendant, and for such purpose marshal its assets and ascertain the respective liens and priorities existing upon each and every part of the said lines, and the amounts due and the rights, liens, and equities of each and all the creditors of said defendant company." As already stated, the bill in no wise attempts to impound the income for the benefit of the complainant and the other judgment creditors. Not only is no such request made, but no preference or priority is asserted in their behalf, as a class, or in behalf of the complainant as an individual. Indeed, its whole framework and structure is utterly inconsistent with the claim now set up by them. At the outset of the bill Drayton states, as already appears, that it was filed in his own behalf, and in behalf of all others in like interest, and later that he had recovered a judgment against the defendant corporation, and that was all that he said in his own interest. Giving those statements their full force and disregarding any contravening allegations, it might well be doubted whether the bill could properly be construed to be a creditor's bill; but however that may be, and however strong the complainant's position was, he

immediately abandoned, or at least waived it, by setting up facts and circumstances and praying for relief wholly inconsistent therewith. It is impossible to perceive how his present claim can be sustained. He nowhere asserts a claim to the income or asks to have it impounded for his own benefit, but on the contrary for the benefit of all of the creditors, "secured and unsecured." Consequently the filing of his bill did not amount to what has been called an "equitable levy." Indeed, the allegation of the bill to the effect that it was filed for himself and others in like interest, is directly contradicted by an allegation immediately preceding the prayers of the bill, wherein he states that it is filed "in behalf of himself and all other creditors of the defendant corporation." Furthermore, it must be borne in mind that the defendant was an insolvent corporation, and that the statements and prayers of the bill were not only entirely consistent with and pertinent to such a condition, but compelled the court to administer its assets equitably and for the benefit of all of its creditors. The court in effect was asked to preserve and administer it as a trust estate.

The difference between a judgment creditor's bill and a general creditor's bill is indicated in Sage v. Memphis and Little Rock Railroad Co., 125 U. S. 361, 8 Sup. Ct. 887, 31 L. Ed. 694. Sage had recovered a judgment against the railroad company and thereupon filed a bill in equity setting forth certain mortgages upon the company's property; that the mortgages exceeded the salable value of the property and franchises; that by reason of the mortgages no bidders could be found for the property; and that as a large part of the mortgage bonds were due and unpaid, the trustees under the mortgage would interfere with the sale of any part of the property under execution, if the plaintiff should attempt a collection of the judgment by that method, and that for the reasons stated the issuance of an execution thereon would cause useless expense and delay and be of no benefit to the plaintiff. He also alleged that if the company's property were held together and operated as a unit, it would produce a large income sufficient to pay all expenses and repairs, and leave a large surplus wherewith to pay off and discharge his debt, and he further alleged that the company had refused to apply its surplus income to the payment of its debts. Under this bill a receiver was appointed, pursuant to its prayers, who proceeded profitably to operate the road. Afterwards the trustee under the mortgage filed a bill of foreclosure, and after the receiver had been discharged, appeared before the master, to whom the matter had been referred, and claimed that the net income derived from the operation of the road by the receiver, belonged to the bondholders and not to Sage. Mr. Justice Harlan, speaking for the court says:

"It is true also that Sage did not sue in behalf of all the creditors of the company or of such as might come in and contribute to the expense of the litigation. He was not bound to pursue that course. It was his privilege under the law to sue for his own benefit, and it was within the power of the court for his protection as a judgment creditor, to place the property of the debtor company in the hands of a receiver for administration under its orders."

And in denying the claim of the bondholders to the income, adds:

"But we do not perceive any legal ground upon which they are entitled to the net earnings of the property, while it was in the hands of the receiver in a suit instituted by a judgment creditor for the protection of his own interests, and not of the interests of the trustees, or of the bondholders, or of other creditors. His suit was in effect an equitable levy for his benefit upon the net income of the property."

In Seibert v. Minneapolis & St. L. Railway Co., 52 Minn. 246, 53 N. W. 1151, the court in distinguishing Sage v. Railroad Co., supra, from the one then under consideration, said:

"The purpose of that action was only to satisfy the plaintiff's claim, and for that purpose the receiver was appointed and the income was earned; but the purpose of this action is, in part at least, to adjust the rights of all the parties, as well to the income as to the body of the property. For the purpose of adjusting their rights to the income, it was necessary for the court to lay hold upon, not merely that portion which the plaintiff might be entitled to, but that which all the parties were entitled to. The order appointing the receiver not assuming to appropriate it to plaintiff, the court was to be regarded as taking and holding it for all the parties, as their rights and interests might appear, at least so long as none of them made objection."

See, also, Union Trust Co. v. Illinois Midland Railway Co. et al., 117 U. S. 434, 6 Sup. Ct. 809, 29 L. Ed. 963.

The opinion of the court below in the case at bar was rested solely upon the authority of Gilman et al. v. Ill. & Miss. Tel. Co., 91 U. S. 603, 23 L. Ed. 405, but we find nothing in the opinion therein which controls this, or which in any wise antagonizes the views above expressed. In that case the court held that notwithstanding certain mortgaged property of a railroad had, by a state court been decreed to be sold in a foreclosure suit, still as the mortgaged property remained in the possession of the company, and as the decree of foreclosure made no provision for disturbing that possession and none whatever as to the income of the road between the time of the decree and of the sale, and as the telegraph company had recovered a judgment against the railroad company while it was still in possession of the property and receiving and controlling the income thereof, and had thereupon garnished in the hands of the agents of the railroad company, at its various stations, moneys which had been received by them from the income and earnings of the road, the moneys so garnished belonged to the judgment creditor. The decision was based upon the theory that under the mortgages the railroad company could hold possession and receive the earnings thereof until the mortgagee should take possession, or the proper judicial authority should interpose, and that as the road remained in the possession of the company which was receiving its income without intervention or objection on behalf of the mortgagee, such income was liable to be appropriated by a creditor of the company in a proper proceeding such as the telegraph company had pursued. That proceeding was taken solely for the benefit of the judgment creditor against a railroad in the full possession and control of its property and income, and is so totally unlike the one under consideration as to render further comment thereon unnecessary. Our conclusion therefore is that the income in dispute belonged to the bondholders and not to the judgment creditors.

192 F.—20

[2] The only question remaining for consideration deals with certain allowances made to the receivers and to counsel in the case, but after reviewing the record in that behalf, we conclude that although they were liberal, we do not feel justified, under the evidence, in holding that they were so unreasonable or excessive as to demand reduction. It is perhaps desirable that special reference should be made to the allowance to the counsel who filed the cross-bill of foreclosure. The decree made thereunder, it will be recalled, was set aside by the court because it was made without notice to the trustee of the bondholders. The substituted decree, however, under which the sale of the railway property was made, was founded upon the cross-bill, and for this reason we think the allowance made to the counsel who filed it was proper and should stand.

The decree is accordingly reversed in respect of the disposition made of the income between November 11, 1909, and January 24, 1910, and in all other respects it is affirmed. Neither party will be allowed costs in this court as against the other.