FIRST SAVINGS BANK & TRUST CO. OF ALBUQUERQUE, N. M., v. STUPPI.

In re GARCIA.

(Circuit Court of Appeals, Eighth Circuit. November 5, 1924.)

No. 6579.

1. Bankruptcy ⬤�net322—Allowance to mortgagee of only reasonable counsel fees to time of mortgagor's petition in bankruptcy held proper.

Allowance of reasonable value of services of counsel in mortgage foreclosure proceedings in state court up to time petition in bankruptcy was filed against mortgagor *held* proper under usual mortgage stipulation for 10 per cent. as attorney fees, in view of other language of mortgage.

2. Bankruptcy ⬤⟷322—Court entitled to fix reasonable attorney fees without regard to mortgage stipulation.

The court, familiar with value of legal services and having before him character of proceedings in which services were rendered, may pass on reasonableness of such services without further testimony, and is not required to accept stipulation of parties for 10 per cent. attorney fees for foreclosure of mortgage as reasonable value of such services.

3. Bankruptcy ⬤⟷316(2)—Provisions of mortgage for attorney fees held to include attorney fees in protecting mortgagee's interests in bankruptcy court.

Provision in mortgage for attorney fees *held* to show clear intention that mortgagor should pay, and mortgaged property should be under lien, for any legal services necessary to protection of mortgagee's right and to include attorney fees in enforcement of mortgagee's rights in bankruptcy proceedings.

4. Bankruptcy ⬤⟷316(2)—Attorney fees not allowable to mortgagee for services for filing petition, not being "fixed liability" and not "absolutely owing."

Under Bankruptcy Act, § 63, subsec. 1, cl. (a) being Comp. St. § 9647, requiring that debts evidenced by writing, to be provable, shall be "a fixed liability * * * absolutely owing at the time of the filing of the petition, * * * whether then payable or not," attorney fees in representing mortgagee in bankruptcy proceedings are not allowable; the debt not being fixed and absolutely owing at time

of filing petition, unless at that time right to payment and amount of payment are ascertainable.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Absolutely Owing; Fixed Liability.]

5. Courts ⬤⟷372(9)—Local state law governs construction of mortgages.

In construction of mortgages, local state law governs, but, where no applicable decision of state courts is cited, federal court will determine applicable law.

6. Bankruptcy ⬤⟷323—Certain provisions of mortgage held not to entitle mortgagee to rents and profits in receiver's hands.

Under clause of mortgage giving mortgagee right to possession and rents and profits after default, until he was successful in obtaining possession he could not claim rents and profits, and if mortgagee never took possession, nor took legal steps to obtain possession, he could not in bankruptcy proceedings claim rents and profits coming into hands of receiver under such provisions.

7. Bankruptcy ⬤⟷323—Mortgagee, suing for receiver subsequent to bankruptcy proceedings, held entitled to lien on rents and profits turned over by receiver.

Under mortgage giving mortgagee lien on rents and profits, and providing for appointment of receiver at his option, though mortgagee procured appointment of receiver in state court subsequent to mortgagor's voluntary bankruptcy proceedings, mortgagee was entitled to lien on rents and profits coming into receiver's hands, and turned over by him to trustee in bankruptcy.

8. Bankruptcy ⬤⟷323—Allowance limited by allegations and prayer of claim.

Mortgagee, claiming lien only on rents and profits turned over to mortgagor's trustee in bankruptcy by receiver, is limited in recovery to the allegations and prayer of claim.

9. Bankruptcy ⬤⟷323—Expenses caused by mortgagee instituting receivership proceedings chargeable not to general fund but against mortgaged property.

Where mortgagee, after mortgagor's voluntary bankruptcy proceedings, instituted receivership proceedings in state courts, expenses in connection with proceedings by trustee to transfer administration of property to bankruptcy court are properly chargeable against mortgaged property, and not against general fund.

Appeal from the District Court of the United States for the District of New Mexico; Colin Neblett, Judge.

In the matter of Jose Garcia y Ortega, bankrupt. From an order overruling in part the referee's report, recommending allowance of claim of the First Savings Bank & Trust Company of Albuquerque, N. M., as mortgagee, the latter appeals. Modified and affirmed.

A. B. McMillen, of Albuquerque, N. M., for appellant.

Herman Mohr, of Albuquerque, N. M., and J. O. Seth, of Santa Fé, N. M., for appellee.

Before STONE, Circuit Judge, and MUNGER and MILLER, District Judges.

STONE, Circuit Judge. This is an appeal from a decree in the bankruptcy matter of Jose Garcia y Ortega. It is the second appearance of this litigation in this court. The bankrupt had executed a mortgage, securing the payment of a note to appellant. A balance being overdue thereon, appellant began foreclosure in the state court. In pursuance of a clause in the mortgage, it applied to that court for the appointment of a receiver to take charge of the property pending foreclosure and to pay over to it the net income therefrom. The application for a receiver in the state court was made the day after the bankrupt had filed his voluntary petition in bankruptcy. The receiver was appointed by the state court, took possession and proceeded to administer the property. The trustee in bankruptcy brought an action to restrain this proceeding in the state court and to compel the delivery of the property and proceeds (collected while in receivership) to him. That action was successful, being affirmed in this court. First Savings Bank & Trust Co. v. Butler, 282 F. 866. In consequence of the above decision, the receiver in the state court turned over the property and $2,188.49, which represented the net income therefrom while in his hands. For almost a year longer the property was administered in the bankruptcy court with the result that, including the amount received from the state receiver and deducting the expenses of litigation above noticed, there was a net balance of $3,479.20 from such income. Shortly after the decision in the previous appeal, appellant filed, in the bankruptcy proceeding, this proof of claim which included not only the balance due, principal and interest, but 10 per cent. thereof as attorney's fees and the court costs expended in the foreclosure suit, and prayed that it be allowed a valid first lien therefor upon the property and upon such part of the rents and profits thereof coming to the hands of the receiver in the state court, and for a sale of the property and an application of its proceeds to the above claim. The referee reported, recommending the allowance of the principal and interest prayed, the foreclosure suit costs, and $750 as attorney's fees. Further, he recommended a declaration that the lien of the mortgage protected the above sums and, also, a declaration that, if necessary to make up a deficiency in the payment of the above, the rents and profits from such property

since the initiation of the foreclosure proceedings were within the lien of the mortgage. The amount allowed for attorney's fees was something under half of 10 per cent. of the indebtedness due under the mortgage. The court, in part, affirmed and, in part, overruled the referee. It overruled the referee in so far as he had allowed interest from the filing of the petition in bankruptcy and in so far as he had found the above rents and income to be subject to the mortgage. In other respects, the report of the referee was approved and the property ordered sold. The sale price proved insufficient to care for the unpaid principal of the indebtedness. It is from portions of the above order that this appeal is brought.

Appellant complains of two matters: First, it contends that the attorney's fees should have been allowed upon the basis of 10 per cent. of the accrued indebtedness; second, it insists that the rents and profits from the property since the initiation of the foreclosure proceedings in the state court were subject to the lien of the mortgage and should be applied to the deficiency from the sale price of the property.

### I.

[1] Appellant's contention, concerning the amount of attorney's fees, is based upon a clause of the mortgage which provides that the principal sum shall be "payable three years after date, with interest at the rate of eight per cent. per annum from date until paid, payable quarterly, with ten per cent. additional on the amount unpaid if placed for collection in the hands of an attorney. * * * *" The court found that the reasonable value of the services of counsel in the foreclosure proceedings in the state court up to the day when the petition in bankruptcy was filed was $750, and denied allowance for any services thereafter, those services being furnished in connection with this claim in the bankruptcy court.

Appellant contends that the above stipulation in the mortgage determines the amount of the fees "and especially since there is nothing to show that the stipulated amount was unreasonable"; and, second, that if the court is to determine the amount of the fees on the basis of reasonable fees within the amount stipulated in the mortgage, then appellant is entitled to have the services of counsel relative to its claim in bankruptcy considered in fixing such amount. We need not examine whether the determination of the first contention is one depending upon state law or not, as both

the Supreme Court of New Mexico (Exchange Bank v. Tuttle, 5 N. M. 427, 23 P. 241, 7 L. R. A. 445) and this court (Mechanics' American National Bank v. Coleman, 204 F. 24, 122 C. C. A. 338) have determined that such a provision means that the fee shall be reasonable in value not exceeding the amount stipulated. Also see British & American Mortgage Co. v. Stuart, 210 F. 425, 427, 127 C. C. A. 157 (5th C. C. A.); McCabe v. Patton, 174 F. 217, 98 C. C. A. 225 (3d C. C. A.). Furthermore, it may be observed that other stipulations in the mortgage concerning this subject strongly lead to the view that a reasonable fee was the expressed intention of the mortgage when all of its parts are read together. The other provisions in the mortgage and above intended are as follows: that in case of default, the mortgagee might sell the premises and that from the proceeds thereof, among other things, there should be first paid "the reasonable expenses of said party of the second part or its successors or assigns, and all other expenses, including attorney's fees, counsel fees for advice, and professional services"; and in case of foreclosure by judicial proceedings or in case of any suit at law or in equity or in any probate or administrative proceeding, wherein the mortgagee should become a party by reason of being interested in the premises, there should be charged as a part of the judgment against the premises "all reasonable costs, charges, attorney's and solicitor's fees in any such suit or proceedings. * * *" Therefore, it seems clear that the court was right in determining that the reasonable value of the services was the measure to be applied.

[2] It is argued that the court should have taken the stipulation of the parties as representing the reasonable value of the services in the absence of evidence that such stipulated amount was unreasonable. While the evidence upon this point is not in the record, the record does disclose, among the items of legal services in the bankruptcy proceedings for which payment is asked, one for "one-half day consumed in taking depositions upon the question of attorney's fees." We may, from this, fairly assume that there was before the referee and court testimony of this character. Absent such, it would be competent for the court, familiar with the value of legal services in his jurisdiction and having before him the character of proceedings in which such services were rendered, to pass upon the question of the reasonableness of such services without further testimony thereon.

Whether the court, in estimating the value of such services should consider legal services in connection with the collection of the indebtedness in the bankruptcy proceedings depends upon two matters: First, whether the parties contracted for the payment of such services; and, second, whether the Bankruptcy Act prohibits allowance for such services.

[3] As to the first of these propositions: There are several provisions in the mortgage which might be considered in this connection. They are that the services should be paid for if the matter should be "placed for collection in the hands of an attorney." This provision would not of itself be sufficient to show an intent to include such services in the bankruptcy matter. Mechanics' American National Bank v. Coleman, 204 F. 24, 122 C. C. A. 338 (this court). However, there is another provision as follows:

"In case this instrument be foreclosed by judicial proceedings, and in case of any suit at law or in equity, or in any probate or administrative proceeding wherein said party of the second part or its successors or assigns shall become a party by reason of being interested in the premises, there shall accrue hereunder and be paid all reasonable costs, charges, attorney's and solicitor's fees in any such suit or proceedings by the said parties of the first part, and the same shall be a further charge and lien on said premises and be included in the amount of any judgment or decree rendered and be paid out of the proceeds of the sale of said premises, with interest at the rate of one per cent. per month if not otherwise paid by the said parties of the first part."

Also, there are other provisions in the mortgage, not quite so directly in point as the last quotation above, which provide for the payment of attorney's fees where there is a sale of the property by the mortgagee without judicial proceedings. We think these provisions, taken together, show a clear intention by the parties that the mortgagor shall pay and the mortgaged property shall be under lien for any legal services necessary to the protection or enforcement of the mortgagee's rights under the instrument. This would be broad enough to include services in connection with enforcement of its rights in the bankruptcy proceedings.

[4] As to whether such a contract provision should be enforced. We think section 63 of the act (Comp. St. § 9647), which enumerates the "debts which may be proved," and particularly clause (a) of subsection 1 which applies expressly to debts "evi-

denced by * * * an instrument in writting," excludes a claim for such services rendered in the bankruptcy matter. The reason is that such section requires that a debt to be provable shall be "a fixed liability * * * absolutely owing at the time of the filing of the petition against him [the bankrupt], whether then payable or not. * * *" Upon this requirement, generally, see Zavelo v. Reeves, 227 U. S. 625, 630, 33 S. Ct. 365, 57 L. Ed. 676, Ann. Cas. 1914D, 664, and Swarts v. Bank, 117 F. 1, 54 C. C. A. 387 (this court). As to application of this section to similar stipulations, in notes or mortgages, providing for payment of attorney fees, see McCabe v. Patton, 174 F. 217, 98 C. C. A. 225 (3d C. C. A.); British & American Mortgage Co. v. Stuart, 210 F. 425, 127 C. C. A. 157 (5th C. C. A.); In re Gimbel, 294 F. 883 (5th C. C. A.); and Collier on Bankruptcy (11th Ed.) p. 962. That Merchants' Bank v. Thomas, 121 F. 306, 57 C. C. A. 374 (5th C. C. A.), cited by appellant, is not opposed, see discussion of that case by the same court in British & American Mortgage Co. v. Stuart, 210 F. 425, at page 429, 127 C. C. A. 157.

It is true that in the cases just cited concerning attorney's fees, there was no service rendered before the bankruptcy petition was filed, but that is not a governing consideration. The debt is not "fixed" and "absolutely owing at the time of the filing of the petition," within this statutory meaning, unless at that time the right to payment and the amount of payment is ascertainable. Watson v. Merrill, 136 F. 359, 362, 69 C. C. A. 185, 69 L. R. A. 719 (this court); In re Roth & Appel, 181 F. 667, 669, 104 C. C. A. 649, 31 L. R. A. (N. S.) 270 (2d C. C. A.); Colman Co. v. Withoft, 195 F. 250, 252, 115 C. C. A. 222 (9th C. C. A.). This intent of the act, generally to stop the incurrence or accumulation of provable debts or liabilities against the estate after filing the petition, is evinced in other parts of this section as follows: Stoppage of interest (subsection 1); stoppage of costs in an action to recover a provable debt (subsection 3); stoppage of costs and interest on provable debts reduced to judgment (subsection 5). At the time this claim was filed, it was not possible to ascertain what legal services would be required concerning this claim in the bankruptcy proceeding; much less what the reasonable value of such services would be. It was possible to ascertain the right to and amount of fees due for services up to the filing of the petition,

because the mortgage (upon which the right was based) was then existent, as also were all of the facts from which the services and the value thereof must be ascertained. Therefore, the trial court was right in allowance for services up to the filing of the petition and in denying allowance for services thereafter.

## II.

[5] The next contention of appellant is: "that the provision giving the mortgagee the right to the rents and profits, as well as possession of the mortgaged property, and the provision for the appointment of a receiver, with instructions to collect the rents and profits and apply the proceeds to the mortgage debt, gave the mortgagee a lien upon the rents and profits for the security of its debt, which was binding alike upon the bankrupt and his successor the trustee."

In construction of mortgages, the local state law governs. Atlantic Trust Co. v. Dana, 128 F. 209, 220, 62 C. C. A. 657 (this court); In re Brose, 254 F. 664, 666, 166 C. C. A. 162 (2d C. C. A.). As no applicable decision of the New Mexico courts is brought to our attention we must attempt construction and application of the pertinent provisions in this mortgage.

The clause in the mortgage giving right to possession and collection of rents and profits is as follows:

"In case of any default whereby the right of sale and foreclosure occurs hereunder, the said party of the second part or its successors or assigns shall at once become entitled to the possession, use and enjoyment of the property aforesaid, and of the rents, issues and profits thereof from the accruing of said right and during the pendency of foreclosure proceedings and the period allowed for redemption, if any there be, and such possession shall at once be delivered to the said party of the second part on request, and in case of refusal, the delivery of such possession may be enforced by the said party of the second part by an action of unlawful detainer or other proper civil proceeding."

The clause relating to receivership is as follows:

"The said party of the second part, its successors or assigns, may, at their option, upon complaint filed or any other legal proceeding commenced for the foreclosure of said deed of trust, apply for, and shall be entitled as a matter of right and without regard to the value of the premises or the solvency or insolvency of the makers of said

note or any owner of the mortgaged premises, on ten days' notice to said makers or their assigns, in any court of competent jurisdiction, to have granted a receiver of the rents, issues and profits of said premises, with power to lease said premises for a term to be approved by the court, with power to pay taxes and assessments and other charges which are or may become a lien on said premises, and keep the same insured, and with power to take proceedings to dispossess the tenants and make all necessary repairs and with such other powers as may be deemed necessary, who, after deducting all charges and expenses attending the execution of said trust as receiver, shall apply the residue of said rents and profits to the payment and satisfaction of the debt secured hereby."

[6] As to the first clause above quoted, it is enough to say, first, that, even though the appellant might have a mortgage upon the rents and profits and the right to demand possession and to enforce that demand by legal proceedings, yet, until he was successful in obtaining such possession he could not claim the rents and profits, Teal v. Walker, 111 U. S. 242, 248, 4 S. Ct. 420, 28 L. Ed. 415; Freedman's Savings Co. v. Shepherd, 127 U. S. 494, 8 S. Ct. 1250, 32 L. Ed. 163; United States Trust Co. v. Railway Co., 150 U. S. 287, 308, 14 S. Ct. 86, 37 L. Ed. 1085; Willis v. Banking Co., 169 U. S. 295, 310, 18 S. Ct. 347, 42 L. Ed. 752; Atlantic Trust Co. v. Dana, 128 F. 209, 219, 62 C. C. A. 657 (this court); second, that there was never any actual possession taken by appellant; and, third, that there were no legal steps taken to obtain possession under this clause.

[7] The second clause above quoted provided an optional method of enforcing the right to such rents and profits. Thereunder it was necessary to secure the appointment of a receiver. Appellant attempted to do and did do that, thus complying fully with the terms of the mortgage. The contention of appellee that initiation of the bankruptcy proceeding vested the property, at that moment, in the trustee in bankruptcy and therefore the subsequent appointment of a receiver in the state court was unavailing under this mortgage provision, seems answered by the case, in this court, of Atlantic Trust Co. v. Dana, 128 F. 209, 62 C. C. A. 657. While that suit was a receivership, the principle here involved would be the same. In that suit, a mortgagee entitled, as here, to entry or receivership to enforce its lien upon the income of the property of a water company then in receivership under a judgment creditors' bill, began foreclosure of its mortgage and prayed, inter alia, a receiver to collect the income for its benefit. The court (page 218 [62 C. C. A. 666]), speaking through Judge, now Mr. Justice, Van Devanter, said:

"The contingency had happened when, under the terms of the mortgage, the trust company was entitled to claim the income, and when, for the protection of the bondholders, it was essential that the pledge should be enforced. The existing receivership did not impair the pledge, or render the property or its income less subject to the mortgage to the trust company than if the property was still in the possession of the water company. Freedman's Savings Co. v. Shepherd, 127 U. S. 494, 507, 8 S. Ct. 1250, 32 L. Ed. 163; Kneeland v. Trust Co., 136 U. S. 89, 97, 10 S. Ct. 950, 34 L. Ed. 379. It altered the situation only to the extent that it affected the manner in which the pledge should be asserted to make it effective. The situation and the course to be pursued could not well be better stated than is done in Seibert v. Minneapolis & St. Louis Ry. Co., 52 Minn. 246, 256, 53 N. W. 1151, 1154, where the court says:

" 'If, however, the receiver is appointed solely for the benefit of the plaintiff, in an action to which the senior mortgagees of income are not parties, and they do not choose to acquiesce, what are they to do? They cannot take possession from the mortgagor; the action of the court has disabled them to do that. Shall they sue the receiver for the possession? The court would hardly permit that. Shall they petition the court to discharge him, or direct him to turn the property over to them? There might be reasons—there were in this case —growing out of questions of priority as to part of the property, and to the earnings properly attributable to that part, why the court could not properly grant such a petition. Being unable to take the possession from the mortgagor or from the receiver, what, then, can they do, except, if they are not parties to the action, to come in by intervention, or, if they are parties, to petition the court that there be paid to them by the receiver, out of the earnings which shall come into his hands, such part as, but for his appointment, they would have had the right to receive and apply on their mortgages. * * * When such mortgagees are in the action, and so in position to make their demand upon the court, it is entirely immaterial in what form it is made, so that it is clearly made, and presents to the court the ground of their claim,

if it be not already before it. And at whose instance the receiver was appointed, and on what ground he was appointed, are wholly immaterial. Their right to demand that the earnings which shall come into the hands of the receiver shall be held for and paid to them does not depend on those things, but on the facts that, by taking the property through its receiver, the court has placed itself, so far as such senior mortgagees are concerned, in the position of the mortgagor, and that their only remedy is by application to the court.'

"By placing the property of the water company in the custody of a receiver, and carrying on the business of the company through him, the court assumed the burden, during the continuance of the receivership, of administering the property and collecting the income for the benefit of whomsoever was entitled thereto, giving due effect to such priorities of right as were or should be acquired under equitable levies of judgment creditors or pledges made by the debtor company. Hitz v. Jenks, 123 U. S. 297, 306, 8 S. Ct. 143, 31 L. Ed. 156; Dow v. Memphis & Little Rock R. R. Co., 124 U. S. 652, 655, 8 S. Ct. 673, 31 L. Ed. 565; Union Bank of Chicago v. Kansas City Bank, 136 U. S. 223, 236, 10 S. Ct. 1013, 34 L. Ed. 341; Porter v. Sabin, 149 U. S. 473, 479, 13 S. Ct. 1008, 37 L. Ed. 815; Ames v. U. P. Ry. Co. (C. C.) 60 F. 966, 969. A pledge of income does not become effective so long as the mortgagor is permitted to remain in possession of the property and to receive and disburse the earnings. Galveston Railroad v. Cowdrey, 11 Wall. 459, 482, 483, 20 L. Ed. 199; Gilman v. Illinois & Mississippi Telegraph Co., 91 U. S. 603, 616, 617, 23 L. Ed. 405; American Bridge Co. v. Heidelbach, 94 U. S. 798, 24 L. Ed. 144; Freedman's Savings Co. v. Shepherd, 127 U. S. 502, 503, 8 S. Ct. 1250, 32 L. Ed. 163; United States Trust Co. v. Wabash Ry. Co., 150 U. S. 287, 308, 14 S. Ct. 86, 37 L. Ed. 1085. For the same reason the pledge is not operative so long as the mortgagee, by remaining silent, acquiesces in the possession of the property and the collection of the income by a receiver for purposes other than the satisfaction of the mortgage debt. Sage v. Memphis & Little Rock R. R. Co., 125 U. S. 361, 378, 8 S. Ct. 887, 31 L. Ed. 694; Seibert v. Minneapolis & St. L. Ry. Co., 52 Minn. 255, 53 N. W. 1151. The mortgagor was not in possession, but a receiver was, and he was not collecting the income for the benefit of the trust company. To be effectual, a demand should generally be addressed to one who possesses the authority to determine whether it shall be granted or refused. Here the demand for the income could not be acted upon by others than the court, and it so vitally affected the existing receivership that, to be effectual, it was essential it should be presented to the court in the receivership suit. The trust company, therefore, in pursuance of the only course open to it—clearly the correct one—obtained the leave of the court, and intervening in the receivership suit, filed therein a petition setting forth the facts showing its right to the income, and containing ample prayers to entitle its claim to recognition. This intervention in aid of its pending suit for a foreclosure was an effective assertion of the trust company's claim, and operated to charge with the lien of its mortgage all the income subsequently earned. Dow v. Memphis & Little Rock R. R. Co., supra; Sage v. Memphis & Little Rock R. R. Co., 125 U. S. 378, 379, 8 S. Ct. 887, 31 L. Ed. 694; Seibert v. Minneapolis & St. Louis Ry. Co., 52 Minn. 256, 53 N. W. 1151; Hook v. Bosworth, 12 C. C. A. 208, 214, 64 F. 443, 448, 24 U. S. App. 341, 349; Central Trust Co. v. Wabash, etc., Ry. Co. (C. C.) 46 F. 26, 34; High on Receivers, § 254c. It was not necessary that a new receiver be appointed under its bill, or that the existing receivership be formally extended to its suit. These were matters beyond its control. It is sufficient that after this assertion of its claim the existing receivership was continued, and the subsequent income brought within the court's control, that in the decree subsequently entered in the foreclosure suit, to which the water company and the receiver were parties, all questions going to the existence of the pledge and the right to enforce it at the time of the trust company's intervention in the receivership suit were settled and determined favorably to the trust company, and that this income is needed to satify the mortgage debt. The income was not something which could be dealt with or sold under the foreclosure decree, like the real and personal property covered by the mortgage, but, being money, or rights in action which were being converted into money, had to be impounded and preserved so that upon foreclosure of the mortgage it might be forthcoming under the pledge, and be capable of application upon the mortgage debt. It requires no further statement or discussion to show that the means employed for the enforcement of this pledge of income have been by a suit for foreclosure in a court of equity and other proceedings in that court consistent with the theory that the mortgage

gave a lien upon the income and did not convey the title. As to the income earned subsequently to the trust company's intervention in the receivership suit, possession thereof was obtained through a receiver in a suit where the mortgagee was asserting a right to the income under its mortgage."

Also see In re Brose, 254 F. 664, 166 C. C. A. 162 (2d C. C. A.), and In re Clark Realty Co., 234 F. 576, 148 C. C. A. 342 (7th C. C. A.), both of which were bankruptcy cases.

[8] Of course, the bankruptcy court had the right to draw to itself the exclusive administration of this and all other property of the bankrupt. That is what it did and the state court was compelled to relinquish its jurisdiction and the possession of the property and rents of its receiver. 282 F. 866. However, the trustee in bankruptcy was not compelled to take such action and might have permitted foreclosure in the state court had that course seemed wisest. To paraphrase the statement in Atlantic Trust Co. v. Dana, supra, page 218 (62 C. C. A. 666): "The existing receivership [bankruptcy] did not impair the pledge, or render the property or its income less subject to the mortgage. * * * It altered the situation only to the extent that it affected the manner in which the pledge should be asserted to make it effective." When appellant secured a receiver in the state court; when, upon transfer of the administration of that property and income to the bankruptcy court, it appeared therein and established its claim under the mortgage; when the property was sold and failed to satisfy its debt so that a portion remained unpaid—then it was entitled to have such income applied to that purpose. In its claim, filed in this bankruptcy proceeding, appellant asks for only such part of the income as was collected by the receiver in the state court. This amounted to $2,188.49. Having thus limited its allegations and prayer, it is bound thereby.

We think the court erred in refusing to apply this income, collected by the receiver in the state court, to satisfaction of the debt.

The appellant sought and obtained a report by the trustee of the receipts and expenditures in connection with this property. That report was approved by the court in a paragraph of the order from which this appeal is brought.

[9] It is very questionable whether this appeal is not premature as to this matter. At any rate the contention as to the merits is not well founded. The attack is upon several items of expense in connection with the bill of the trustee to transfer administration of the mortgaged property from the state court to the bankruptcy court. The claim is that such character of expenditures cannot be charged against the mortgaged property and, if properly chargeable, are so only as costs of the action and allowable only as such. It is not questioned that the expenditures were made and were reasonable. All of these expenditures were caused by appellant and it is not only proper that its security should pay them but it would be unjust for the general fund to pay them under the circumstances present here.

Our conclusion is that the order should be modified to the extent of making the net rents in the hands of the trustee to the amount of $2,188.49 applicable to payment of the balance due on appellant's debt. With this modification, the order is affirmed.