**BANK OF ITALY NAT. TRUST & SAVINGS ASS'N v. FARMERS' & MERCHANTS' NAT. BANK OF MERCED et al.**

**No. 6111.**

Circuit Court of Appeals, Ninth Circuit.

Oct. 27, 1930.

F. W. Henderson, of Merced, Cal., and Louis Ferrari and J. J. Posner, both of San Francisco, Cal., for appellant.

Hartley F. Peart, of San Francisco, Cal., and M. G. Gallaher and Gilbert H. Jertberg, both of Fresno, Cal., for appellees.

Before RUDKIN and WILBUR, Circuit Judges, and KERRIGAN, District Judge.

RUDKIN, Circuit Judge.

There is little controversy over the facts in this case. One Hart was city treasurer of the city of Merced and president and manager of the Farmers' & Merchants' National Bank of Merced. The Merced Security Savings Bank applied to Hart, as treasurer, for a deposit of city funds to the amount of $25,000, and to secure the deposit, as required by a statute of the state, delivered to Hart negotiable bonds of the value of approximately $28,000. Hart defaulted as city treasurer. The Farmers' & Merchants' National Bank converted to its own use the securities deposited with Hart by the Merced Security Savings Bank; a receiver has been appointed for the Farmers' & Merchants' National Bank; and the Bank of Italy National Trust & Savings Association has succeeded to all the rights of the Merced Security Savings Bank. The different institutions, for convenience, will hereafter be referred to as the national bank, the savings bank, and the Bank of Italy. The present action was instituted by the Bank of Italy against the national bank and its receiver to recover the value of the securities converted by the latter bank. Upon final hearing the court below found that the securities, of the value of $27,300, were converted as charged, and gave judgment for their value, less certain deductions hereinafter referred to. From this judgment the Bank of Italy has appealed, and the propriety of the deductions made by the court below from the value of the securities converted is the only question presented for our consideration.

As a result of the peculations of the city treasurer, four separate actions were commenced. First, the savings bank sued Hart and the surety on his official bond to recover the value of the securities here involved; second, the savings bank sued the city of Merced to recover the value of the same securities; third, the city of Merced sued the savings bank to recover the balance remaining of the special deposit of $25,000 of city funds, and, fourth, the city of Merced sued the treasurer and the surety on his official bond to recover the sum of approximately $30,000 misappropriated by the city treasurer. Included in this last item was an item of approximately $14,000, which the appellant, as successor of the savings bank, refused to pay over to the city because of the conversion of the securities by its treasurer. These several suits were settled or compromised in some way, but the nature of the settlement is not fully disclosed by the record. This settlement was relied upon as a defense to the present action, but we deem it sufficient to say that the court below ruled against the defense, and no appeal has been taken from that part of the judgment.

What is disclosed, and substantially all that is disclosed, by the record in this connection, is this: The corporate surety on the bond of the city treasurer addressed a letter to the vice president of the Bank of Italy at San Francisco, who presumably represented the appellant here, in which the surety com-

pany agreed as follows: First, to pay to the city of Merced the sum of $11,000; second, to hold the city harmless from a claim of the appellee receiver based upon certain warrants, aggregating approximately $3,000; third, to pay to the appellant the sum of $15,047.02, being the balance of the $25,000 deposit heretofore referred to, with interest at the agreed rate, which amount was to be paid over by the appellant to the city; fourth, to pay to the appellant the further sum of $5,500, and also one-half of any saving which the surety company might make on a claim of the appellee receiver against the city, the surety reserving the right to pay such claim in full or to make such adjustment as it saw fit. It was further agreed that, in consideration of the payments so made, the appellant would at once bring suit against the receiver of the appellee bank for the value of the bonds misappropriated by that bank, and that, if successful, the appellant would pay one-half of the net proceeds of the recovery, after deducting costs, expenses, and attorneys' fees, to the surety company, and that, in case either party to the agreement was reimbursed in full for any loss sustained, then the other party should be entitled to the balance of the net proceeds until fully reimbursed. The terms of this agreement were carried out, and the two items of $5,500 and $15,047.02, above referred to, were the items which the court below deducted from the value of the securities converted by the appellee bank.

The theory upon which the deductions in question were allowed was thus stated by the court:

"There can be but one compensation for an injury or tort of the kind that is involved in this suit, which is the market value of the securities converted at the time of conversion, with interest thereon until judgment. The plaintiff has received partial compensation of its loss. It is immaterial from whom any portion of such damage is paid, but any payment on account thereof reduces the liability pro tanto."

We agree with the court that ordinarily there can be but one recovery for a tort of this kind; and for that very reason the plaintiff in such an action is ordinarily enti-

tled to recover the full value of the property converted, regardless of the extent of his individual loss. 26 R. C. L. 1152. But we cannot concur in the further statement that it is immaterial by whom any portion of the damage was paid, or that payment from any source reduced the liability pro tanto, for we think it is well settled that the mere delivery of money or property by a stranger to an obligation does not discharge it in whole or in part, unless so provided by statute, or unless the delivery is received or accepted by the creditor as a payment on account of the debt or other obligation. 48 C. J. 589; Bradley v. Lehigh Valley R. Co. (C. C. A.) 153 F. 350, 353. Indeed, the larger item was not paid to the appellant at all, otherwise than as a mere agent to pay the same over to the city. Neither item was paid by the surety for the purpose of discharging the obligation in suit; they were not intended for any such purpose, nor were they accepted by the appellant with that object in view. On the contrary, it was expressly agreed between the parties that an action should be brought by the appellant to recover for the conversion, and this agreement is utterly inconsistent with a claim that the money was paid for the purpose of discharging the obligation to be sued upon. For these reasons, the court erred in allowing the deductions complained of.

The principal contention of the appellees seems to be that there was no conversion in the first place, and that, in any event, there was a release or settlement of the matter in litigation. But, as already stated, the court below decided adversely to these contentions, and no appeal has been taken from that part of the judgment.

We may say in conclusion that the contention of the appellees that the questions we have considered are not properly presented by the record is not well founded. The case was tried by the court below without a jury, by written stipulation of the parties, and at the close of the testimony a motion was interposed by the appellant for a judgment in its favor for the sum of $28,000, the alleged value of the securities converted.

For error in allowing the deductions complained of, the judgment of the court below must be reversed and the cause remanded for further proceedings.