## PACIFIC FIRE INS. CO. v. PENNSYL-VANIA SUGAR CO.
### No. 5406.

Circuit Court of Appeals, Third Circuit.
Aug. 31, 1934.

Horace M. Schell and Hiram B. Calkins, both of Philadelphia, Pa., for appellant.

Thomas Raeburn White, James E. Riely, and Charles Myers, all of Philadelphia, Pa., for appellee.

Before BUFFINGTON, DAVIS, and THOMPSON, Circuit Judges.

DAVIS, Circuit Judge.

On September 13, 1922, the Pennsylvania Sugar Company, hereinafter called plaintiff, shipped three carloads of sugar, each car containing 600 bags, from Philadelphia, consigned to itself, care of Western Federal Brokerage Company, to Chicago, Ill. The shipments were routed by rail and lake and

were to be delivered by Chicago Steamship Lines, Inc., at Chicago.

The Pacific Fire Insurance Company, hereinafter called defendant, insured the sugar against loss. 1,735 bags were safely carried by both the railroads and the Steamship Lines and were by the latter placed on a pier or wharf in Chicago. While waiting delivery, the sugar was partially destroyed by fire on September 25, 1922. It was agreed that the total value of the sugar was $11,728.60 and the loss amounted to $5,266.31, which was due the plaintiff with interest from March 1, 1923, if it is entitled to recover at all.

The plaintiff brought suit against the Steamship Lines to recover the loss and the railroads, which were admittedly liable, cooperated with the plaintiff in its effort to recover from the Steamship Lines.

The plaintiff secured a judgment against the Steamship Lines, but it was insolvent and the judgment was worthless.

It required some time to secure the judgment and to discover that it was worthless. So the defendant waived the requirement of the policy that suit against it be commenced within twelve months after the fire, for if plaintiff succeeded in recovering loss from others, defendant would be relieved of its liability under the policy. The railroad companies, being likewise liable and being hopeful that the plaintiff would succeed in recovering its loss from the Steamship Lines, before the expiration of the statute of limitations for bringing suit against them, entered into an agreement with the plaintiff to pay, and did pay, to it a sum sufficient to satisfy the loss for which each was liable, "as a security" for the payment of the claim which plaintiff had against them, "but without effecting or constituting a payment" of the claim and "without effecting or constituting a release or extinguishment of the liability" of the railroads to the plaintiff.

After discovering that the judgment against the Steamship Lines was worthless, the railroad companies on March 8, 1932, jointly entered into a further agreement with the plaintiff wherein it was provided that the money theretofore paid as "security" should "be treated as, and is hereby declared to be a *loan* from the said Railroad Companies to the Pennsylvania Sugar Company, the same to be repaid exclusively out of the net recovery of Pennsylvania Sugar Company from the Pacific Fire Insurance Company in a suit or suits which Pennsylvania Sugar Company hereby agrees to bring and prosecute against the Pacific Fire Insurance Company for the loss of said consignments of sugar." The plaintiff had no liability to repay the "loan" except out of the recovery from the defendant.

In consideration of the agreement the plaintiff did "remise, release, quit-claim and forever discharge" the railroad companies from all loss and damages which it had sustained on account of the fire.

Pursuant to its agreement, plaintiff commenced suit against defendant and at the end of the trial the jury, by the direction of the trial judge, rendered a verdict against defendant for $8,498.05 on which judgment was entered, and from this judgment defendant appealed and raises four questions:

1. The first question is whether or not the payment made as "security" just before the time for bringing suit expired, or the subsequent agreement providing that it should no longer be held as "security" but should constitute a "loan" and be treated as such, in fact and law, reimbursed the plaintiff for its loss and extinguished defendant's liability.

[■] It is well settled that any payment as damages to the insured by the wrongdoer before settlement with the insurer, by operation of law, reduced the liability of the insurer to the extent of the payment, and if the insured releases his right of action against the wrongdoer before settlement with the insurer, that release likewise destroys his right of action against the insurer. Insurance Company of North America v. Fidelity Title & Trust Company, 123 Pa. 523, 16 A. 791, 2 L. R. A. 586, 10 Am. St. Rep. 546; Illinois Automobile Insurance Exchange v. Braun, 280 Pa. 550, 124 A. 691, 36 A. L. R. 1262; Connecticut Fire Insurance Co. v. Erie Railroad Co., 73 N. Y. 399, 29 Am. Rep. 171; Auto Owners' Protective Exchange v. Edwards, 82 Ind. App. 558, 136 N. E. 577.

[■■] What the parties did was not intended by them as a payment or discharge, for the agreement expressly provides that it is paid "as security for the payment * * * without effecting or constituting a payment * * * and without effecting or constituting a release or extinguishment of the liability" of the railroads. Whether or not the transfer of money shall operate as a payment ordinarily depends upon the intention of the parties. The Kimball, 3 Wall. (70 U. S.) 37, 44, 18 L. Ed. 50; Luckenbach v. W. J. McCahan Sugar Refining Co., 248 U. S. 139, 149, 39 S. Ct. 53, 63 L. Ed. 170, 1 A. L. R. 1522. The purpose of the par-

ties was to make the plaintiff secure so that it would not lose its right of action against the railroad companies, if it did not succeed in its suit against the Steamship Lines, for before that litigation ended, the time might expire within which it could bring suit against them. This purpose was made entirely ·clear by the language used. Similar agreements are common in business. Pennsylvania Railroad Co. v. Burr (C. C. A.) 130 F. 847; Bradley v. Lehigh Valley Railroad Co. (C. C. A.) 153 F. 350; Luckenbach v. W. J. McCahan Sugar Refining Co., supra.

Neither did they, by these agreements, violate the agreement between plaintiff and defendant whereby defendant waived the statute of limitations. They had the same purpose in view which the defendant had in mind when it waived the time limit provided in the policy for bringing suit against it. This agreement and the action of the parties in accordance with its provisions did not effect by operation of law the exact contrary to what they intended.

This being so, there was no legal prohibition preventing them from changing the "security" to a "loan" and from providing for its conditional repayment. Of course, the railroad companies were trying to escape liability for the loss which ultimately resulted in placing it upon the defendant. But this could not be done without releasing the railroad companies from their liability, and this the defendant did in the second agreement.

■ 2. The second question · relates to whether or not the release of the transportation companies barred defendant's right to subrogation.

Under the general law the plaintiff could not release these companies from liability without extinguishing the liability of the defendant. But the policy provided in typewriting that: "It is understood and agreed that the assured may, without prejudice, release Transportation Companies from liability from loss by fire from whatever cause arising to above described property."

The policy was executed on August 8; 1922, and under its terms the insurance was to be effective only while the sugar was in possession of the railroads. The sugar was shipped on September 13th following, and the defendant must have had these railroad companies in mind when it wrote into the policy the above provision for releasing them from liability.

Defendant says that the right to release the transportation companies, in order to be effective, had to be exercised before the loss occurred.

But there is no hint in the language that there was a time limit within which the right must be exercised, and none will be implied in view of the fact that the provision must be construed most strongly against the defendant company. It prepared the policy and wrote in this special provision which is contrary to the right of subrogation given to the defendant by a general printed provision, and if there were to be any limitations on the plain, general language, they should have been expressly stated. When the defendant wrote in the provision giving the plaintiff the right to release the railroad companies from liability in case of loss, it knew that this might defeat its right of subrogation, and if it did not intend this to be done, it should have made that fact clear. We do not think that this right which it conferred upon the plaintiff had to be exercised before the loss occurred. When released, the railroads no longer had any liability and there was no right to which the defendant could be subrogated. True it released them conditionally, but that does not affect the question here, for before it attempted to exercise the right, it had disappeared in the release of the companies and there was then no right to which defendant could be subrogated.

■ 3. The third question raised relates to the validity of the following provision in the bill of lading: "Any carrier or party liable on account of loss of or damage to any of said property shall have the full benefit of any insurance that may have been effected upon or on account of said property, so far as this shall not avoid the policies or contracts of insurance: Provided, That the carrier reimburse the claimant for the premium paid thereon." The appellant says that this provision is invalid because it violates section 2, title 49 of the United States Code (49 USCA § 2), which provides that no carrier shall "indirectly, by any * * * device * * * collect (s), or receive (s) from any person * * * a greater * * * compensation for any service rendered * * * in the transportation of * * * property * * * than it * * * collects, or receives from any other person * * * for doing for him * * * a like and contemporaneous service * * * under substantially similar circumstances and conditions."

But appellees say that the validity of this provision is saved by the requirement that carriers had to reimburse the claimant for the premium paid. However that may be,

the plaintiff and railroads do not have to rely upon the provision in the bills of lading for the reason that they could have done all that they did with or without this provision.

4. The appellant finally contends that under the facts in this case it is entitled to judgment non obstante veredicto.

The cases upon which it relies simply establish that a trial judge has the right to direct for the defendant when the evidence is insufficient to support the cause of action. There is no question about the soundness of this proposition, but that is very different from the contention that an appellate court has the right to enter a judgment non obstante veredicto. The argument of appellant on this point under the facts in this case cannot be maintained.

The judgment is affirmed.