**ADAMS v. NAPA CANTINA WINERIES, Inc.**

No. 8365.

Circuit Court of Appeals, Ninth Circuit.

Feb. 1, 1938.

Harry Gottesfeld, Eugene D. Bennett, Joseph A. Brown, and Robert L. Mann, all of San Francisco, Cal., for appellant.

T. J. O'Leary, of Oakland, Cal., for appellee.

Before GARRECHT, MATHEWS, and HANEY, Circuit Judges.

HANEY, Circuit Judge.

Appeal has been taken from an order which affirmed a special master's report and allowed a claim, filed by appellant against appellee as a debtor under section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207 and note, "as recommended" by the special master. The latter recommended that the claim "be allowed as a priority claim in the sum of $400.00, and be disallowed as to all amounts in excess" thereof.

Although the record before us is inadequate, there are, we believe, sufficient facts before us when obtained piecemeal from various reports and documents.

Appellee is a California corporation, and, during the times herein mentioned, the president thereof was one James J. Mahoney.

On December 13, 1933, one Patrick Murphy entered into an agreement with Mahoney and the debtor, wherein the last two named agreed to pay Murphy the sum of $23,290 with interest, and secured the same by a chattel mortgage on 82,000 gallons of wine, located in the winery of the debtor. The record does not disclose who owned the wine.

About January 26, 1934, appellant paid Mahoney the sum of $2,400, the details concerning which will hereafter appear. On March 12, 1934, Mahoney signed and delivered a note payable to appellant 30 days after date for $2,400 with 4 per cent. interest, statutory costs and disbursements, and a reasonable attorney's fee.

On May 7, 1934, Murphy entered into another agreement with Mahoney and the debtor, agreeing on a method by which the wine was to be disposed of, and providing that Murphy would not file a suit to foreclose the chattel mortgage within 6 months, provided Mahoney and the debtor complied with the agreement.

On September 28, 1934, appellant filed in the state court an action against the debtor, Mahoney, John Doe, and Richard Roe, containing two counts. The first count stated that the defendants therein became indebted to appellant in the sum of $2,400, "for money had and received." The second count alleged execution of the note dated March 12, 1934, by Mahoney, and alleged that thereafter the debtor "ratified and approved the acts of its agent, James J. Mahoney in executing and delivering said note and received and accepted the benefits thereof." Judgment for $2,400 against each of the defendants was prayed. A writ of attachment issued in the action and a sheriff levied upon the wine at the winery and took possession thereof. The answer of the debtor is not contained in the record. On October 8, 1934, Mahoney in his answer admitted execution of the note, and alleged that it was delivered "as part of a partnership agreement between plaintiff and defendant, entered into for the purpose of carrying on

the business of St. Helena Napa Valley Wine Company, a copartnership. * * * "

On October 26, 1934, appellant entered into an agreement with Murphy. It was therein recited that appellant had filed the action mentioned, and claimed to have "a good and subsisting cause of action against" Murphy. The basis for such claim does not appear in the record, unless it was for money had and received. It was also recited that appellant "with the consent of" Murphy had caused the wine to be attached. Appellant agreed to supply the sheriff with money "to open the wine cellar from time to time as found necessary in the discretion of the Sheriff * * * for the purpose of the preservation of the aforementioned wine for the benefit of" Murphy. It was also agreed that Murphy would cause the foreclosure of the chattel mortgage on November 7, 1934, or soon thereafter, and endeavored to secure the appointment of a receiver for the possession and sale of the wine. It was also agreed that, from the proceeds of the sale, Murphy would pay appellant his claim, not exceeding $3,000, by dividing the proceeds between one Wilson, who was a holder of a judgment against the debtor and Mahoney, appellant, and Murphy in a manner specified. It was also provided that, after appellant had received payment in full, he would assign his cause of action against the debtor and Mahoney, or any judgment recovered against them, to Murphy.

On December 31, 1934, the debtor filed its petition under section 77B of the Bankruptcy Act, in the court below. 11 U.S.C.A. § 207 and note. The petition referred to appellant as "an alleged creditor," and stated that he had commenced an action upon a note "from said James J. Mahoney and not from the debtor" and had caused a writ of attachment to be issued. The petition was approved as properly filed on January 3, 1935.

On May 3, 1935, Murphy and appellant entered into an agreement reciting that the parties had entered the agreement of October 26, 1934, and wished to cancel it. In consideration of $500 paid, and the execution, delivery, and payment of a note for $1,500, by Murphy to appellant, it was agreed that the prior agreement was canceled; that appellant would file in the reorganization proceedings a claim to recover money which was obtained from the sale of wine, but would not urge such petition unless requested to do so by Murphy; that, if appellant recovered any money under the petition, he would return to Murphy the amount paid him by Murphy, not exceeding $2,000. It was further agreed that appellant, at the written request of Murphy, would prosecute his action against the debtor and Mahoney in the state court, when permitted to do so by action in the reorganization proceedings, and that if appellant recovered in the action he would return to Murphy the amount paid him by Murphy, not exceeding $2,000. It was also agreed that, if appellant made no recovery either under his action in the state court, or the petition in the reorganization proceedings to be filed by him, then appellant was under no duty to pay Murphy $2,000; that appellant released Murphy of any claims he had against Murphy on payment of $2,000; and that, if Murphy failed to pay the note for $1,500, then appellant would apply the $500 on any claim he might have against Murphy, arising either from the nonpayment of the note or from the prior contract of October 26, 1934.

On September 28, 1935, appellant filed a proof of debt with the referee, heretofore mentioned, stating that the debtor was indebted to appellant in the sum of $2,400, with interest from January 26, 1934, $500 attorneys' fees, and $165.30 expended costs, in all amounting to the total sum "of Thirty Two Hundred and Nine and 32/100 Dollars ($3209.00)"; that the "consideration of said debt" was "moneys advanced * * * for the use and account of the said [debtor] as more fully set out in the attached copy" of the complaint in the state court action brought by appellant; that writ of attachment issued in the state court action and that thereunder a sheriff levied on the wine and kept it in his possession; and that "no part of said debt has been paid by said corporation debtor and that [appellant] has not, nor has any person by his order or to his knowledge or belief for his use, has [had] or received any security for the said debt whatsoever. * * * "

On October 9, 1935, the debtor filed a document designated as "Reply And Answer To Claim Of George Adams." On October 10, 1935, two secured creditors filed objections to appellant's claim, stating: (1) That the claim was not a valid claim against the debtor, but a claim against Mahoney; (2) that Mahoney individually gave his promissory note to ap-

pellant in payment of the claim; (3) that Murphy paid appellant the sum of $500 as part payment of the obligation and gave appellant his promissory note for the balance of the obligation; (4) that although appellant was prosecuting his claim against the debtor, he had also been treating the obligation as one of Murphy individually, and had been trying to collect it from Murphy; (5) that appellant had waived all claims against the debtor, and was relegated to his rights under the Murphy and Mahoney notes.

On October 23, 1935, the debtor filed amended objections, stating all the matters contained in the objections of the secured creditors, except the fifth one.

In the meantime, the referee, before mentioned, died, and on December 6, 1935, the court below referred the matter to another referee as special master. Hearing on the objections began on January 13, 1936, at which time appellant filed an "Amended Proof Of Debt." It differed from the first one, only in stating that no security or note had been received from the debtor. After some testimony was taken, the hearing was continued until January 29, 1936. It appeared for the first time in the hearing or proceeding that appellant had received money from Murphy. The special master thereupon stated that "it looks as if somebody is trifling with the Court," and later made statements to the effect that he did not believe counsel had followed the proper procedure in not stating the facts concerning the Murphy payment and agreements in the proof of debt filed by appellant, and "I am telling you you cannot trifle with me that way." Continuance was then had until February 7, 1936.

On February 5, 1936, appellant presented to the special master a second amended proof of debt which was like the preceding one except that it added thereto statements relating payment by Murphy, and the agreements, copies of which were attached. The special master marked it "received," but said that he "refused to file said document." On February 7, 1936, the hearing was continued until March 12, 1936.

At the conclusion of the evidence, the special master found that appellant had a claim against the debtor, because the Mahoney note was signed by him "as president of the debtor," saying that the evidence on that fact was conflicting. He found that the $2,000 paid by Murphy should be deducted from $2,400, and that appellant's claim should be allowed as a priority claim, in the sum of $400; that the note of the debtor "was forced from Mahoney by a threat of criminal prosecution and therefore, as far as the interest and attorneys, fees are concerned was without consideration." He also found that "unless directed so to do by a special order of reference, it is not within the province of a special master even to suggest to the court in what manner such court ought to deal with a member of its bar"; he therefore made "no recommendation concerning the conduct of the claimant."

Exceptions to the report of the special master were filed by appellant. At the hearing thereon, on September 28, 1936, the attorney for the debtor "stated that neither debtor nor himself were concerned with the alleged charges made by" the special master. On that date, the court below affirmed the report, and allowed appellant's claim as recommended by the special master. This appeal followed.

Section 77B of the Bankruptcy Act provides in part:

"The term 'creditors' shall include for all purposes of this section and of the reorganization plan, its acceptance and confirmation, all holders of claims of whatever character against the debtor or its property, including claims under executory contracts, whether or not such claims would otherwise constitute provable claims under this title. The term 'claims' includes debts, securities, other than stock, liens, or other interests of whatever character." 11 U.S.C.A. § 207(b) (10).

"Upon approving the petition or answer or at any time thereafter, the judge * * * (6) shall determine a reasonable time within which the claims and interests of creditors and stockholders may be filed or evidenced, * * * the manner in which such claims and interests may be filed or evidenced and allowed." 11 U.S.C. A. § 207(c).

"In proceedings under this section and consistent with the provisions thereof, * * * the duties of the debtor and the rights and liabilities of creditors, * * * shall be the same as if a voluntary petition for adjudication had been filed and a decree of adjudication had been entered on the day when the debtor's petition or answer was approved." 11 U.S.C.A. § 207 (o).

There is nothing in the record to show that the court below determined "the manner in which such claims and interests may be filed or evidenced and allowed," as provided in subdivision (c) (6), supra, and we therefore assume that the manner approved is that specified in other parts of the Bankruptcy Act. 11 U.S.C.A. § 93, provides in part:

"(a) Proof of claims shall consist of a statement under oath, in writing, signed by a creditor setting forth the claim, the consideration therefor, and whether any, and, if so what, securities are held therefor, and whether any, and, if so what, payments have been made thereon, and that the sum claimed is justly owing from the bankrupt to the creditor. * * *

"(c) Claims after being proved. may, for the purpose of allowance, be filed by the claimants in the court where the proceedings are pending or before the referee if the case has been referred.

"(d) Claims which have been duly proved shall be allowed, upon receipt by or upon presentation to the court, unless objection to their allowance shall be made by parties in interest. * * *

"(i) Whenever a creditor whose claim against a bankrupt estate is secured by the individual undertaking of any person fails to prove such claim, such person may do so in the creditor's name, and if he discharge such undertaking in whole or in part he shall be subrogated to that extent to the rights of the creditor." * * *

Finally with respect to reports of special masters, General Order 47 in Bankruptcy, 11 U.S.C.A. following section 53, provides: "The reports * * * of special masters in proceedings under * * * section 77B of the Act [11 U.S.C.A. §§ 205 and 207], shall be deemed presumptively correct, but shall be subject to review by the court, and the court may adopt the same, or may modify or reject the same in whole or in part when the court in the exercise of its judgment is fully satisfied that error has been committed."

■ The first issue is whether or not the debtor was liable to appellant, or whether Mahoney was the debtor. The evidence was uncontradicted, except by Mahoney, and leads to the conclusion reached by the special master. Mahoney's denial is of little weight inasmuch as he admitted that his verified answer, in the state court action brought by appellant, was false. We adopt the finding of the special master that the note was that of the debtor. It was a provable debt. 11 U.S.C.A. § 103(a) (1).

The next issue relates to the amount for which the debtor was liable, exclusive of any payments thereon. The special master failed to discuss the question as to whether the costs of appellant in the state court action should be allowed. He disallowed attorneys' fees and interest on the ground that the note was forced from Mahoney by threat of criminal prosecution, and the promise to pay attorneys' fees and interest was without consideration.

■ The costs should have been allowed in the total indebtedness. 11 U.S.C.A. § 103(a) (3) provides: "Debts of the bankrupt may be proved and allowed against his estate which are * * * (3) founded upon a claim for taxable costs incurred in good faith by a creditor before the filing of a petition in an action to recover a provable debt." The debt being provable, and the action having been filed before the petition of the debtor was filed herein, the costs should have been allowed, unless they were not "incurred in good faith." There is nothing to show bad faith of appellant at the time the action was filed. The agreement with Murphy by which appellant received $2,000, occurred about 8 months after filing the state court action.

■ The finding of the special master, that the note was forced from Mahoney by threat of criminal prosecution, cannot be sustained, for there is no evidence to support it. The note was made on March 12, 1934. Thereafter appellant delivered the note to an attorney for collection. The attorney discussed the matter with an assistant district attorney of San Francisco, and criminal prosecution was then threatened. This, however, occurred after the note was executed. There was no other evidence of threats of criminal prosecution. The amount of the note on which the debtor was liable, included, therefore, in addition to costs, interest and reasonable attorneys' fees. Interest on the note to the date of filing the debtor's petition herein was provable. 11 U.S.C.A. § 103(a) (1). Likewise, attorney's fees for services rendered in filing action on the note, prior to the filing of debtor's petition herein, are provable. First Savings Bank & Trust Co. v. Stuppi, 8 Cir., 2 F.2d 822. Compare: McCabe v. Patton, 3 Cir., 174 F. 217; In re Roche, 5 Cir., 101 F. 956; British & American Mortgage Co. v. Stuart, 5 Cir., 210 F. 425; Gugel v. New Orleans Nat.

Bank, 5 Cir., 239 F. 676; In re Gimbel, 5 Cir., 294 F. 883.

The next issue relates to the effect of the $2,000 payment to appellant by Murphy. Appellant originally contended that he was a secured creditor, and that he therefore was not required to show any payments by Murphy. He has since abandoned this position. See 11 U.S.C.A. § 1(23).

■ The general rule is as stated in Luckenbach v. McCahan Sugar Co., 248 U.S. 139, 149, 39 S.Ct. 53, 55, 63 L.Ed. 170, 1 A.L.R. 1522: "Whether the transfer of money or other thing shall operate as a payment, is ordinarily a matter which is determined by the intention of the parties to the transaction." Stated in another way, the rule is "that the mere delivery of money or property by a stranger to an obligation does not discharge it in whole or in part, unless so provided by statute, or unless the delivery is received or accepted by the creditor as a payment on account of the debt or other obligation." Bank of Italy Nat. T. & Sav. Ass'n v. Farmers' & Merchants' Nat. Bank, 9 Cir., 44 F.2d 325, 327. See, also, Bradley v. Lehigh Valley R. Co., 2 Cir., 153 F. 350; Pacific Fire Ins. Co. v. Pennsylvania Sugar Co., 3 Cir., 72 F.2d 958. Such is the rule in California. Cal.Civil Code § 1473; Erkenbrecher v. Grant, 187 Cal. 7, 200 P. 641; Dodds v. Spring, 174 Cal. 412, 163 P. 351; 20 Cal.Juris. 905, § 6.

The first inquiry is whether or not Murphy was liable also on the debtor's obligation. Inasmuch as appellant paid his money to Mahoney, presumably for stock in the debtor, and a sale at that time was in violation of the Corporate Securities Act, St.Cal.1917, p. 673, as amended, the basis of appellant's claim might possibly have been the void sale. There is a suggestion that Murphy was, at a time not disclosed by the evidence, an officer of the debtor. There is no evidence to show Murphy's liability on the sale of the stock. Murphy in fact denied any liability to appellant. We must, of necessity, treat the liability as one with which Murphy was unconnected.

■ Was it intended that the payment by Murphy to appellant was a payment on the debtor's obligation to appellant? The agreement of May 3, 1935, indicates no such intention. All it indicates is that Murphy was to pay appellant $2,000 in satisfaction of some alleged claim held by appellant against Murphy, upon the understanding that appellant would return to Murphy that sum if appellant recovered that amount from the debtor. Appellant testified that he received the $2,000 pursuant to the agreement with Murphy. Murphy testified that he paid the $2,000 on the advice of his attorney. We believe it must be held, under the circumstances here, that the payment was not intended to be one on the debtor's obligation. Luckenbach v. McCahan Sugar Co., supra; Gordon Oil Co. v. Cities Service Refining Co., 1 Cir., 44 F.2d 514.

We have reached that conclusion with reluctance because of the absence of evidence as to the nature of appellant's alleged claim against Murphy. However, if it should develop that Murphy was liable with the debtor on the obligation, a procedure is specified in the Bankruptcy Act for reconsideration of the claim. 11 U.S. C.A. § 93(k).

The question as to whether the claim is entitled to priority has not been presented to us. On that question we express no opinion.

Appellant has devoted a part of his brief to a justification of his action in the proceeding. Since the court below took no action in that regard, there is nothing which requires discussion by us.

■ The special master included in his report two letters written by an attorney for appellant, which had not been introduced in evidence. The special master extracted them from the files of the deceased referee, and included them in his report, apparently to show lack of knowledge of the Murphy contracts by the deceased referee. It goes without saying that the letters could not be considered without having been in evidence. Inasmuch as they deal with the proposition discussed in the preceding paragraph, nothing further need be said.

Reversed and remanded, with directions to enter an order allowing appellant's claim in the full amount thereof, namely, $3,209.32.