In re OAHU CABINETS, LTD., Debtor.

Bankruptcy No. 80–00266.

United States Bankruptcy Court,
D. Hawaii.

Feb. 26, 1981.

David M. Louie, Honolulu, Hawaii, for Landlord.

Steven Chung, Honolulu, Hawaii, for debtor.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JON J. CHINEN, Bankruptcy Judge.

The issue before this Court is whether or not, in the instant case, the Landlord is entitled to collect interest and collection fees on past due lease rental payments. By Stipulation filed herein on January 22, 1981, the Landlord and the Tenant agreed to waive hearing and submitted the issue to the Court upon memoranda of the parties.

Based upon the records and memoranda herein, the Court makes the following Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

1. Oahu Joint Ventures, hereafter "Lessor", and Oahu Cabinets, Ltd., hereafter "Lessee", entered into a lease agreement dated September 13, 1976, hereafter "Lease", for certain premises located at Honouliuli, District of Ewa, City and County of Honolulu, State of Hawaii.

2. Pursuant to the lease, Lessee was to pay $5,046.00 per month in rent and $1,413.96 per month in estimated common expenses on the first day of each month from July 1, 1979 through March 25, 1980.

3. On March 25, 1980, an involuntary petition in bankruptcy was filed against

Lessee in Bankruptcy No. 80–00172, United States Bankruptcy Court, District of Hawaii.

4. At the time the petition was filed, Lessee owed Lessor rent for three months (January, February and March 1980) at a rate of $6,459.96 per month, or a total of $19,379.88 in outstanding arrearages pursuant to the lease agreement.

5. Lessee is currently undergoing a Chapter 11 Reorganization Proceeding. The Trustee for Lessee has affirmed the lease agreement, and anticipates curing the entire defaulted amount upon court approval of the plan for reorganization.

6. The Lessor with an unsecured claim now seeks compensation from the general fund for the $19,379.88 amount owed, and also claims it is entitled to interest and collection fees on the $19,379.88 pursuant to article E in the lease agreement. Lessor further contends that Sec. 726(a)(5) of the Bankruptcy Code authorizes payment of post-petition interest in certain circumstances.

7. Lessee, while acknowledging its obligation on the $19,379.88 in past due rent, objects to the allowance of interest and collection fees, especially post-petition interest and collection fees, for the following reasons:

a. Post-petition interest is statutorily proscribed under 11 U.S.C. § 502(b)(2) of the Code;

b. Collection fees are generally granted only to the extent they are actually incurred prior to the filing of the petition in bankruptcy;

c. In reorganization proceedings, courts are guided by equitable principles and by a policy in favor of rehabilitation of the failing business entity. As such, it has the power to discharge, enforce, or amend certain contractual obligations of the debtor.

## CONCLUSIONS OF LAW

I. *Is Lessor entitled to post-petition interest on its pre-petition claims.*

1. Portions of 11 U.S.C. Sec. 502(b)(2) read as follows:

§ 502. Allowance of Claims of Interests

(b) Except as provided in subsections (f), (g), (h) and (i) of this section, if such objection to a claim is made, the Court, after notice and a hearing, shall determine the amount of such claim as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that . . .

(2) such claim is for unmatured interest.

2. Furthermore, 11 U.S.C. Sec. 726 reads in part as follows:

Sec. 726. Distribution of property of the estate

(a) Except as provided in section 510 of the title, property of the estate shall be distributed—

(5) Fifth, in payment of interest at the legal rate from the date of the filing of petition, on any claim paid under paragraph (1), (2), (3) or (4) of this subsection; and . . .

3. In commenting on the above two sections, it is stated in 3 Collier on Bankruptcy Sec. 502.02 (15th Ed. 1980) in part as follows:

What emerges first and most clearly not only from the language of the statute but the policy behind that section 502(b)(2) is that any claim is disallowed to the extent it is for unmatured interest as of the date of the filing of the petition. And, moreover, whether interest is considered to be matured or unmatured for the purpose of this section, is to be determined without reference to any ipso facto bankruptcy clause in the agreement creating the claim. Thus, the mere filing of the petition may, indeed, serve to accelerate the unpaid portion of the debt to the date of the petition. But it will not serve to accrue interest unmatured beyond the date of the filing. In a sense, the filing of a petition operates as the acceleration of the principal amount of all claims against the debtor, not only those which are accelerated by agreement that filing would accelerate the maturity date . . . .

It is true that in some cases the estate is sufficient to care for interest accrued after the filing date and in this situation it would seem inappropriate to return to the debtor a surplus of his assets after accommodation of all claims without a distribution to the creditors of accrued interest to the date of payment by the trustee. In short, a caveat to the general rule announced by section 502(b)(2) is that a debtor should pay interest computed to the date of payment, a rule whose operation is merely suspended where a debtor is so hopelessly insolvent that his asset in no way can pay the total amount of a claim, i. e., principal and interest prior to bankruptcy.

The 1978 legislation continues the proposition that a debtor may be charged with interest until the creditor is paid in full where there are sufficient assets to accommodate creditors within the scheme of the statute concerning priorities and allowability of claims. Section 726(a)(5), in listing the order of priority of payment from the debtor's assets, provides for "payment of interest at the legal rate from the date of the filing of the petition on any claim paid under the preceding paragraphs of that section, before any payment of a surplus will be given to the debtor". Thus, under section 726(a), distribution of the property of the estate is first made to the kinds of claims described in section 507—claims entitled to priority, then timely filed unsecured claims other than priority claims, tardily filed unsecured claims, then claims for fines, penalties or forfeitures before payment of interest from the date of the petition as prescribed in subsection (5). Only following full application of this distributive scheme of section 726(a), may any payment at all be made to the debtor. There is, thus, further proof that the disallowance of claims for unmatured interest or claims accruing after the date of the filing of the petition is one of policy and convenience rather than a statement of substantive law.

■ 4. As stated in *Matter of New York, New Haven and Hartford R. Co.,* 4 B.R. 758 (D.Conn.1980), the general rule is that post-petition interest is not allowable in ordinary bankruptcy and reorganizations. The main reasons advanced for this principle are that the date the petition is filed conveniently "fixes the moment when the affairs of the bankrupt are supposed to be wound up," *Sexton v. Dreyfus,* 291 U.S. 339, 344, 31 S.Ct. 256, 257, 55 L.Ed. 244 (1911), and that "recitors should not be disadvantaged vis-a-vis one another by legal delays attributable solely to the time-consuming procedures inherent in the administration of the bankruptcy laws." (citations omitted).

5. There are several exceptions to the general rule. One exception is that, when a debtor is solvent and there is a surplus after all creditors are paid in full, the creditors should receive interest on their claims prior to any surplus being turned over to the Debtor. This is only equitable. *In re Carpenter,* 363 F.Supp. 218 (W.D.Tenn.1973) *Matter of New York, New Haven and Hartford R. Co., supra.*

■ 6. In discussing Chapter X proceedings under the Bankruptcy Act, Collier states that:

In the case where the proposed plan calls for payment to the creditors of 100% of their claims ... then certainly post-petition interest should be allowed on all claims. ...

6 Collier on Bankruptcy, § 9.08 (14th ed. 1979).

It would seem that this rule should also apply to chapter 11 proceedings under the Bankruptcy Code.

7. The records show that the voluntary petition herein was filed on May 9, 1980, and the schedules of Assets and Liabilities were filed on May 19, 1980. The summary of Debts and Property show the assets to be valued at $1,022,474.67 and the liabilities to be valued at $843,222.09.

8. The Lessee has indicated that, under the plan, all creditors will be paid 100% of their claims. And it appears from the schedules and assets that there are suffi-

cient assets to pay all creditors in full. However, because there was no hearing on the matter, it cannot be said that the Lessee's assets are sufficient to satisfy all claims of equal rank with Lessor, plus interest. Thus, until such a hearing is held to determine whether or not there are sufficient assets to pay all claims of creditors of equal rank in full together with interest, it is premature for this Court to allow or disallow post-petition interest.

II. *Is the Lessor entitled to a collection fee in the amount of $775.20 ($19,379.88 × $.04) pursuant to Article E of the Lease.*

1. Pursuant to Paragraph 5 of the Lease, the Lessor claims *inter alia* :

(1) Out-of-pocket costs of collection, and (2) an amount equal to the higher of (i) Four Cents (4¢) for every Dollar past due, or (ii) Five Dollars ($5.00) for each billing rendered by the Lessor to the Lessee for a past due amount.

2. Courts have recognized the need to limit claims for post-petition costs and fees and have held that a claim for costs, incurred in good faith by a creditor before the filing of a bankruptcy petition in an action to recover a provable debt, is provable against the estate of the bankrupt. *Adams v. Napa Cantina Wineries, Inc.,* 94 F.2d 694 (9th Cir. 1938). Also, the court in *Adams* limited the claims for interest and attorney's fees incurred pursuant to the delinquent debt to those incurred prior to the filing of the petition. *Id.* at 698; *citing First Savings Bank & Trust Co. of Albuquerque, N.M. v. Stuppi,* 2 F.2d 822 (8th Cir. 1924).

3. In *In re Haynsworth,* 34 F.2d 334, 338 (E.D.S.C. 1928), the court, in denying attorney's fees incurred pursuant to the collection of the creditor's note, stated:

> Where a note contains a provision for attorney's fees, services rendered after the petition in bankruptcy is filed are not as a general rule allowable. By section 63 of the Bankruptcy Act (U.S.C. Title 11, § 103; 11 U.S.C.A. § 103) debt provable against an estate must be for a fixed liability absolutely owing at the time of the filing of the petition. Under this section, the cases hold that if a claim has been placed with an attorney for collection prior to bankruptcy, and collection proceedings are actually instituted, so that the attorney's fees were a fixed liability at the time of the filing of the petition in bankruptcy, such a fee would constitute a proper debt against the estate of the debtor. But services rendered after the filing of the petition will not constitute such a claim; and where a note with attorney's fees clause is secured by a mortgage of real estate or collateral pledged, and a petition in bankruptcy is filed before any action is taken to institute suit, and there is no contest over the validity of the note, nor the right of the owner to have the property sold and the proceeds applied to the satisfaction of the note, and the sale is made by the trustee, of the cases all hold that an attorney's fees is not a proper claim and cannot be charged against the proceeds of the property. [citations omitted].

4. In the instant case, the Lessee has always acknowledged that the $19,379.88 rental arrearage is due and owing to Lessor. Lessee has maintained and continues to maintain that the entire defaulted amount of $19,379.88 will be paid to Lessor as soon as a plan for such payment is approved by this Court. It is apparent, therefore, that Lessor need not have pursued collection or incurred any costs pursuant to the collection of the back rent once Lessor was advised of Lessee's intent to honor its $19,379.88 debt in full. Also, under the automatic stay provisions of 11 U.S.C. § 362(a)(6), Lessor was expressly prohibited from doing so.

5. In addition to its demand for costs of collection, Lessor claims "an amount equal to the higher of (i) Four Cents (4¢) for every Dollar ($1.00) past due, or (ii) Five Dollars ($5.00) for each billing rendered by the Lessor to the Lessee for a past due amount." Lessee contends that claims under this clause of the lease agreement are not allowable since such payments consti-

tute a penalty. Thus, it is now necessary to determine whether the clause is a valid provision for liquidated damages or should be struck down as a penalty provision.

■ 6. The general rule is that a provision for damages will be enforceable as a liquidated damages provision where (1) the anticipated damages in the event of breach of contract are difficult to ascertain, (2) the parties mutually intend to liquidate the amount of damages in advance, and (3) the amount stated as liquidated damages is reasonable and proportionate to the presumed injury which occur as a result of any breach. *Niccoli v. Denver Burglar Alarm*, 490 P.2d 304, (Colo.App.1971). The provision will not be enforced, however, where it is found to be a penalty designed to secure performance of the contract. *Medak v. Hekimian*, 241 Or. 38, 404 P.2d 203, (1965). Whether it is a substitute for performance or a penalty depends on the facts of each case and is a question of law. *Layton Manufacturing Co. v. Dulien Steel, Inc.*, 277 Or. 343, 560 P.2d 1058 (1977).

■ 7. In the present case, Lessor seeks to invoke a provision which imposes on Lessee both pre-petition and post-petition interest, costs and attorney's fees, plus a dollar amount equivalent to the higher of 4¢ per dollar owed or $5.00 per billing rendered. The clause, taken as a whole, is clearly meant to be more than compensatory.

8. In *Garrett v. Coast and Southern Federal Savings & Loan Association*, 9 Cal.3d 731, 511 P.2d 1197, 108 Cal.Rptr. 845 (1973), the court was called upon to determine whether the lender's practice of charging a late charge of 5% on the principal balance for as long as an installment was overdue was enforceable. The court held that the lender's late charge did constitute a penalty, and stated:

> If the sum extracted from the borrower is designed to exceed substantially the damages suffered by the lender, the provision for the additional sum, whatever its label, is an invalid attempt to impose a penalty inasmuch as its primary purpose is to compel prompt payment through the

threat of imposition of charges bearing little or no relationship to the amount of the actual loss incurred by the lender. [citations omitted]. *Id.* at 740, 511 P.2d at 1203 [108 Cal.Rptr. 845].

■ 9. A bankruptcy court, being essentially a court of equity, will not enforce a penalty. *In re Tastyeast, Inc.*, 126 F.2d 879, 881 (3d Cir.) *cert. denied. Modern Factors Co. v. Tastyeast, Inc.*, 316 U.S. 696, 62 S.Ct. 1291, 86 L.Ed. 1766 (1942). In the instant case, the Court finds that the provision reading "plus a dollar amount equivalent to the higher of 4¢ per dollar owed or $5.00 per billing rendered" is an effort to extract a penalty for late payment. Thus, said clause is unenforceable.

■ The Court finds that, pursuant to Par. 5 of the Lease, the Lessor is entitled to reasonable fees and costs incurred on effort to collect the sums due under said Lease. However, where the Lessor, because of an error in its calculation, makes an unreasonable demand upon the Lessee, it should not be allowed fees and costs for such efforts.

The amount of fees and collection costs to which the Lessor is entitled in the instant case will be determined at a subsequent hearing.